STATE of Missouri, Respondent,

v.

Kirbun G. BRISTOL, Appellant.

No. WD 60470.

Missouri Court of Appeals,
Western District.

Feb. 28, 2003.

Craig Johnston, Assistant State Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Richard Starnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before ELLIS, C.J., HOWARD and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Kirbun Bristol was convicted of possession of a controlled substance, § 195.202 RSMo 2000, and driving while his license was suspended, revoked or canceled, § 302.321. On appeal, he challenges the sufficiency of the evidence to support his convictions and claims the trial court erred

in admitting evidence of his driving record and failing to grant a mistrial when the State improperly personalized its closing argument. We reverse in part and affirm in part.

### Factual and Procedural History

On March 8, 2000, State Troopers Brian Hagerty and Trayton Pitts pulled over a vehicle for committing traffic violations on Interstate 70 in Lafayette County. The driver of the vehicle, Kirbun Bristol, identified himself to the Troopers. Neither Bristol nor the other two occupants of the vehicle were able to provide a driver's license or other identification documents. The other two occupants initially gave false names but were eventually identified. Based on computer searches, the Troopers learned that Bristol's driver's license had been revoked and the other two occupants had outstanding warrants. All three men were arrested.

While Trooper Pitts handled the arrests, Hagerty and his canine unit searched the vehicle. The canine indicated the presence of controlled substances in three locations: (1) near the floorboard between the driver's seat and the console to the right of the driver; (2) under the driver's seat; and (3) behind the driver's side passenger door between the back bench seat and the side of the vehicle.

Standing outside the vehicle and using a flashlight, Hagerty looked "well under the [driver's] seat" and saw the corner of a plastic baggie wedged between the center console and the driver's seat. He also saw a metal pipe containing a filter and burnt residue under the front of the driver's seat, near the seat adjustment controls. Hagerty saw pieces of a "blunt cigar"—a cigar filled with marijuana—between the back seat and the back door on the driver's side of the vehicle. He testified at trial that none of these items were in "plain view."

Hagerty summoned Pitts to recover the evidence found in the vehicle. When Pitts sat down in the driver's seat, he "caught" the corner of a plastic bag between the seat and the console. He pulled the bag out and found that it contained five pieces of crack cocaine. Pitts also recovered the homemade metal pipe found under the driver's seat and the marijuana blunt found between the back seat and back driver's side door.

Subsequent investigation revealed Bristol did not own the vehicle. He had borrowed it the night before and was to have returned it to the owner on the day of his arrest.

Bristol was charged for possession of a controlled substance, crack cocaine, with intent to distribute, deliver, or sell in violation of Section 195.211, and with driving while his license was suspended, revoked or canceled in violation of Section 302.321. At trial, over objection by defense counsel, a certified copy of Bristol's complete driving record was admitted into evidence. The record revealed that Bristol's driver's license was under four different active revocations or suspensions at the time of his arrest, and that he had been twice arrested for driving while suspended in November 1999 and pled guilty to one of those offenses on January 8, 2000.

The jury convicted Bristol of the lesser-included offense of possession of a controlled substance, § 195.202, and of driving while his license was canceled, suspended, or revoked. The court followed the recommendation of the jury and imposed a $250 fine and three-month sentence on the possession charge, to be served concurrently with a twelve-month term for driving while revoked. Bristol appeals.

### Possession of a Controlled Substance

Bristol challenges the sufficiency of the evidence to support his conviction for pos-

session of a controlled substance, § 195.202.1. He argues the evidence does not permit a reasonable inference that he had knowledge of and exercised control over the crack cocaine found in the vehicle. Our review is limited to a determination of whether there was sufficient evidence from which a reasonable trier of fact could have found Bristol guilty beyond a reasonable doubt. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo.banc 1998). We must accept as true all of the evidence and inferences favorable to the state and disregard all evidence and inferences to the contrary, giving great deference to the trier of fact. *Id.*

Section 195.202.1 provides that it is unlawful for any person to possess or have under his control a controlled substance. The term "possessed" or "possessing a controlled substance" is defined as:

[A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint[.]

§ 195.010(32).

■ To obtain a conviction for possession of a controlled substance, the State had to prove Bristol had knowledge that crack cocaine was in the vehicle and that he exercised control over the substance through actual or constructive possession. *State v. West*, 21 S.W.3d 59, 63 (Mo.App. W.D.2000). Both, the knowledge and control elements may be proved by circumstantial evidence. *Id.* If actual possession is not shown, constructive possession may be proved when other facts buttress an inference of the defendant's knowledge of the presence of a controlled substance. *Id.* At a minimum, the State was required to prove constructive possession by showing that Bristol had access to and control over the premises where the substance was located. *Id.* If there was joint control over the place where the drugs were found, further evidence is necessary to connect Bristol with the drugs. *State v. Bowyer*, 693 S.W.2d 845, 847 (Mo.App. W.D.1985).

■ Bristol was not in exclusive control of the premises as he was not the owner of the vehicle, and had been in possession of it for less than twenty-four hours. There were two other occupants of the vehicle who had access to the console area where the drugs were found. Consequently, the State had to present evidence of "some incriminating circumstance" to further indicate Bristol had knowledge and control over the crack cocaine. *West*, 21 S.W.3d at 63.[1]

■ The mere fact that Bristol was present in the vehicle where the items were found is not sufficient to make a submissible case. *Id.* at 64. Proximity to the contraband alone fails to prove owner-

---

1. *West* identifies several examples of incriminating circumstances including: self-incriminating statements; consciousness of guilt; routine access to the place where the substance was located; commingling of the controlled substance with defendant's personal belongings; a large quantity of the illegal substance at the scene; and the subject of the controversy in public view. 21 S.W.3d at 63 (citations omitted).

ship. *Id.* There is no evidence that Bristol exhibited signs of consciousness of guilt. He gave his correct name to the Troopers, was cooperative, and did not appear nervous or make any incriminating statements. He made no attempt to flee. Trooper Haggerty testified the contraband was not in "plain view." Trooper Pitts— who knew there was something to look for—saw only a corner of the plastic bag when he sat in the driver's seat to confiscate the evidence; he had to pull the bag out to see the crack cocaine.

Viewed in totality, the facts do not support an inference that Bristol was aware the crack cocaine was in the vehicle and that he exercised control over it. The evidence was insufficient to prove his guilt beyond a reasonable doubt. Accordingly, we reverse Bristol's conviction for possession of a controlled substance. In light of this reversal, we need not address Bristol's point on appeal alleging plain error in the State's closing arguments relative to the presence of cocaine in the vehicle.

### Driving While Canceled, Suspended, or Revoked

Bristol also contends the evidence was insufficient to convict him for driving while his license was canceled, suspended or revoked. He argues his driving record— which was used to prove his revoked status—actually demonstrated he was not notified of the revocation until November 14, 2000, eight months *after* his arrest in March 2000. Bristol contends the State failed to prove he acted with criminal negligence, as he had no notice that his license was suspended or revoked at the time of his arrest. Our review of the record is limited to a determination of whether, after viewing all of the evidence and reasonable inferences in a light most favorable to the verdict, there is sufficient evidence from which a reasonable trier of fact could have found Bristol guilty beyond a reasonable doubt. *Chaney,* 967 S.W.2d at 52.

Under section 302.321.1, a person commits the crime of driving while revoked:

if he operates a motor vehicle on a highway when his license or driving privilege has been canceled, suspended or revoked under the laws of this state and acts with criminal negligence with respect to knowledge of the fact that his driving privilege has been canceled suspended, or revoked.

Section 562.016.5 defines criminal negligence as:

A person **"acts with criminal negligence"** or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care, which a reasonable person would exercise in the situation.

■ Bristol's driving record indicates that at the time of his arrest in this matter on March 8, 2000, his license was under three different suspensions and a revocation. There was a suspension effective August 10, 1999, for failure to appear; an administrative zero tolerance suspension effective December 4, 1999; another failure to appear suspension effective January 28, 2000; and a point revocation effective February 27, 2000. Bristol was eligible to reinstate his license only on the administrative zero tolerance suspension, but there is no evidence he attempted to do so before his arrest on March 8, 2000. In fact, the record reflects he surrendered his license in November 1999 and that he pled guilty in January 2000 to driving while suspended. Bristol's claim that he did not know he was driving with a suspended license on March 8, 2000, is not credible.

■ While courts have held that the prosecution must show the defendant

"knew that his driving privilege had been revoked," circumstantial evidence suffices to prove such mental state. *State v. Hurd*, 877 S.W.2d 644, 645 (Mo.App. W.D.1994). In *Hurd*, a case factually similar to this one, we determined that where the license had been suspended and the certified driving record showed it had not been reinstated by the date of the arrest, the evidence was sufficient to prove the culpable mental state. *Id.*

Bristol's reliance on *State v. Tippett*, 716 S.W.2d 909 (Mo.App. E.D.1986) is misplaced. The defendant in *Tippett* was convicted of driving while his license was revoked. *Id.* at 910. The appeals court reversed the conviction because Tippett did not receive notice of the revocation until ten days after his arrest. Tippett's revocation was based on an accumulation of points and not a single offense requiring revocation. *Id.* at 911. Unlike Bristol, there was no evidence that Tippett's license was under three active suspensions or that Tippett had actually surrendered his license three months prior to this arrest.

The record here provides sufficient evidence upon which a jury could reasonably infer Bristol knew his license was suspended and find him criminally negligent for driving during the suspension. Point denied.

### *Admissibility of Driving Record*

Bristol argues the trial court abused its discretion in admitting and allowing the jury to review his complete driving record because the prejudicial effect of his prior driving offenses outweighed any probative value. He contends the court should have granted his request to redact or read only the relevant portions to the jury, as there was no strict necessity to admit the entire driving record. *Hurd*, 877 S.W.2d at 644.

Evidence of prior bad acts are generally not admissible for the purpose of showing the defendant has a propensity to commit acts of that nature. *State v. Wallace*, 943 S.W.2d 721, 724 (Mo.App. W.D. 1997). However, such evidence may be admitted if "logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial[.]" *Id.* Evidence is logically relevant if it tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan; or (5) identity. *Id.*

The balancing of the effect and value of such evidence lies within the sound discretion of the trial court, and we will not interfere absent a clear showing of abuse of that discretion. *Winfield*, 5 S.W.3d at 515. A trial court clearly abuses its discretion when the ruling is against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Brown*, 939 S.W.2d 882, 883 (Mo.banc 1997). We review evidentiary decisions for prejudice, and not mere error, and will reverse only if the error was so prejudicial that it deprived a defendant of a fair trial. *State v. Johns*, 34 S.W.3d 93, 103 (Mo.banc 2000).

To prove the offense charged under Section 302.321.1, the State was required to show that Bristol had the culpable mental state of driving at a time when he knew his license was revoked or suspended. *Hurd*, 877 S.W.2d at 645. Bristol placed the issue of his intent directly in dispute by arguing that he was not notified his license was suspended until eight months after his arrest in March 2000. Bristol relied on a letter taken from his driving record (i.e., file) to show that he received a suspension notification letter in November 2000. Thus, in effect, Bristol contends he could use the driving record for exoneration pur-

poses, but the State should be precluded from relying on the same record to establish his guilt.

 Our review of the driving record indicates that it was directly relevant as to whether Bristol had reason to know his license was suspended or revoked. The record reflects that Bristol was issued a driver's license in April 1998. That license was thereafter suspended for violations on three separate occasions, with the suspensions becoming effective on August 10, 1999, December 4, 1999, and January 28, 2000. The driving record indicates that Bristol surrendered his license in November 1999 and that the license was subsequently revoked in February 2000. Most or all of the information in the driving record is related to the incidents which led to the suspensions, revocation, or surrender of Bristol's license. The trial court did not abuse its discretion in admitting the complete driving record because it was logically relevant to prove Bristol's intent to violate Section 302.321.1. Point denied.

### Closing Argument

 Bristol contends it was plain error for the trial court to fail to *sua sponte* declare a mistrial as a result of remarks made by the prosecutor during closing argument. Relief under the doctrine of plain error is granted only when there is a strong demonstration that a defendant's rights have been so substantially affected that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Hyman*, 11 S.W.3d 838, 842 (Mo.App. W.D.2000). Bristol bears the burden of demonstrating the statement at issue had a decisive impact on the jury's determination. *State v. Winfield*, 5 S.W.3d 505, 516 (Mo.banc 1999).

At Bristol's trial, the prosecutor made the following statements during closing arguments:

I just want to talk to you briefly this morning regarding the driving while suspended case. It seems like kind of a rinky-dink charge, maybe, it's a traffic thing.

The reason that it's important is driving is not a right, it's a privilege that's granted by the State. Do you think that someone who is so irresponsible that they will drive with their license suspended is going to have that car insured?

Who pays for that? We do, under underinsured motorist coverage and uninsured motorist coverage. And then, if you have the misfortune to be hit by one of these people, who gets to file the claim? We do. And then our premiums go up. So, we're supposed to pay for joy riders who can't be bothered to get a license? They don't care what happens to us.

Bristol contends the prosecutor's comments were unsupported by any evidence that he did not have insurance and were meant solely to inflame passions by personalizing the potential harm to each of the jurors individually. *State v. Wolfe*, 13 S.W.3d 248, 263 (Mo.banc 2000). Bristol contends the argument had a decisive impact based on the jury's recommendation of a twelve-month sentence on the driving while revoked conviction, which was four times longer than the recommended sentence on the possession conviction.

 Relief is rarely granted for plain error in closing arguments because the absence of an objection and request for relief invites judicial interference with summation and increases the risk of error. *State v. Storey*, 901 S.W.2d 886, 897 (Mo. banc 1995). Given the presumption that counsel made a strategic decision not to object, a court's failure to intervene *sua*

*sponte* will seldom warrant reversal. *State v. Cole*, 71 S.W.3d 163, 171 (Mo.banc 2002).

During closing, a prosecutor is permitted to argue general propositions regarding the prevalence of crime in the community, the personal safety of the community's citizens, and the jury's duty to uphold the law including references regarding the jury's failure to convict and pleas to the jury's common experience. *State v. Norton*, 949 S.W.2d 672, 677 (Mo. App. W.D.1997). Improper personalization in closing argument occurs when the argument suggests a personal danger to the jurors or their families. *Wolfe*, 13 S.W.3d at 263.

In this case, the prosecutor's closing argument was not improper. The purpose of the argument was to convince the jurors not to treat the driving while suspended charge as an insignificant offense. The prosecutor did not state or suggest that Bristol was uninsured, rather the argument inferred that there will be no deterrent to irresponsible drivers if the current driving laws are not strictly enforced. The argument was focused on the general threat to the personal safety and economic security of the community-at-large and not individual jurors. Because the statements were well within the range of permissible argument, the trial court had no obligation to declare a mistrial. Point denied.

### Conclusion

We reverse the trial court's judgment of conviction and sentence on the charge of possession of a controlled substance, § 195.202. The remainder of the judgment is affirmed.

All concur.