**STATE of Missouri, Respondent,**

v.

**Carlos A. CHAVEZ, Appellant.**

**No. WD 62048.**

Missouri Court of Appeals,
Western District.

Jan. 30, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 2004.

Application for Transfer Denied
March 30, 2004.

William J. Swift, Columbia, MO, for appellant.

Dora A. Fichter, Assistant Attorney General, Jefferson City, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, ROBERT G. ULRICH, Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Chief Judge.

Carlos Chavez appeals from his conviction by jury of one count of possession of a

controlled substance, § 195.202.[1] In accordance with the jury's recommendation, the trial court sentenced Chavez to a term of five years in the Missouri Department of Corrections.

On May 11, 2001, Chavez walked off his job at a Dairy Queen restaurant in North Kansas City, Missouri, following an argument with the storeowner, and went to a nearby bowling alley. While Chavez was at the bowling alley, Kenneth Faulkner called Chavez on Chavez's cellular telephone "to see what he was up to" and agreed to come pick Chavez up. When Faulkner walked into the bowling alley to meet Chavez, Chavez was carrying a white plastic shopping bag. Chavez told Faulkner that he had "a whole lot of stuff" on him and that they "needed to get out of Northtown." Faulkner and Chavez then got into Faulkner's car, and Faulkner began to drive.

Shortly after leaving the bowling alley, Faulkner drove past a patrol car driven by Officer Robert Masterson of the North Kansas City Police Department. When Faulkner made eye contact with Officer Masterson, Faulkner's eyes became extremely large and a look of surprise came over his face. Because of Faulkner's reaction, Officer Masterson ran a check on the car's license plates, which revealed that the car's owner, Faulkner, had an outstanding warrant for his arrest.

Officer Masterson pulled Faulkner over, approached the car, and asked Faulkner for his driver's license. After running a further check on Faulkner's driver's license, Officer Masterson returned to the car, asked Faulkner to get out of the vehicle, and placed him under arrest on the outstanding warrant.

As Officer Masterson was placing Faulkner under arrest, Officer Cory Devault arrived to assist Officer Masterson, who asked Officer Devault to check out the passenger in the car. Officer Devault approached Chavez and asked for his identification. After determining that Chavez did not have any outstanding warrants for his arrest, Officer Devault asked Officer Masterson if Chavez was free to leave and was told to release him. After Officer Devault told Chavez that he was free to go, Chavez got out of the car, closed the door, and began walking down the street. After walking a short distance, Chavez flagged down an approaching Ford Tempo driven by a woman who worked with him at Dairy Queen and got a ride from her.

Shortly after Chavez left the scene, Faulkner gave Officer Masterson permission to search the car. When Officer Masterson opened the passenger door, he immediately saw a plastic bag containing what appeared to be two rocks of crack cocaine and a scale lying between the passenger seat and the door. Laboratory analysis later revealed that the substance in the bag was 81.57 grams of cocaine salt. When Officer Masterson showed the bag to Faulkner, Faulkner stated, "This is not good. Those look like drugs."

Officer Masterson then instructed Officer Devault to apprehend Chavez. Officer Devault got into his patrol car to chase after the Ford Tempo and called for assistance. Shortly thereafter, Officer Patrick Romaine stopped the Ford Tempo, and Officer Devault arrived to arrest Chavez.

A further search of Faulkner's car uncovered a coin purse with baggies inside containing what appeared to be cocaine residue. At trial, Faulkner testified that the coin purse was his, that he had a "pretty healthy" cocaine habit and that he had used approximately half a gram of cocaine earlier that day. The police also

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

found a black bag containing approximately 400 baggies in Faulkner's glove box.

Appellant was subsequently charged by indictment with one count of trafficking in the second degree, § 195.223. The indictment alleged that Chavez had "possessed 6 grams or more of a mixture of substance containing cocaine base, a controlled substance, knowing of its presence and illegal nature."

On April 15 and 16, 2002, Appellant was tried by jury in the Circuit Court of Clay County. In support of its case, the State presented testimony from all of the officers involved in his arrest, a chemist from a Missouri State Highway patrol crime lab, and Faulkner.[2]

After the State presented its evidence, but before the State officially rested its case, the trial court pointed out, *sua sponte*, the fact that the State's expert from the State crime lab had testified that the substance in the bag was cocaine salt and was not a "cocaine base substance." The Court noted that, while only six or more grams of a cocaine-base substance was required to establish trafficking under § 195.223, over 150 grams of cocaine salt was necessary to establish trafficking under the statute. In response to the Court's observations, the State filed a new information that conformed to the evidence and charged Chavez with possession of a controlled substance under § 195.202.

After the State rested, Chavez presented the testimony from his employer and his sister and also testified himself. After hearing all of the evidence, the jury found Appellant guilty of possession of a controlled substance and recommended that he be sentenced to a term of five years imprisonment. Subsequently, the trial court sentenced Chavez to five years in the Missouri Department of Corrections in accordance with the jury's recommendation. Chavez brings two points on appeal.

In his first point on appeal, Chavez challenges the sufficiency of the evidence to support his conviction. When a criminal defendant challenges the sufficiency of the evidence to support his conviction, our review is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt. *State v. Hawthorne*, 74 S.W.3d 826, 828 (Mo.App. W.D.2002); *State v. Daniels*, 18 S.W.3d 66, 68 (Mo.App. W.D. 2000). " 'The function of the reviewing court is not to reweigh the evidence, but to determine if the conviction is supported by sufficient evidence.' " *State v. Rollett*, 80 S.W.3d 514, 519 (Mo.App. W.D.2002) (quoting *State v. Agee*, 37 S.W.3d 834, 836 (Mo. App. S.D.2001)). In making that determination, we must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict and disregard all evidence and inferences to the contrary. *Hawthorne*, 74 S.W.3d at 828.

Appellant was convicted of possession of a controlled substance under § 195.202. "In order to establish possession, the State must show (1) a conscious and intentional possession of a controlled substance, either actual or constructive, and (2) an awareness of the presence and nature of the substance." *State v. Johnson*, 81 S.W.3d 212, 215 (Mo.App. S.D. 2002). Thus, to obtain a conviction for possession of a controlled substance, the State was required to prove that Chavez had knowledge that the cocaine salts were

---

**2.** Faulkner had previously pleaded guilty to attempted possession of a controlled substance under a plea agreement with the State and received a five-year sentence with a suspended imposition of sentence.

present in the vehicle and that he exercised control over the substance through actual or constructive possession. *State v. Bristol*, 98 S.W.3d 107, 111 (Mo.App. W.D. 2003). "Reasonable inferences drawn from circumstantial evidence can establish the elements of possession and knowledge." *State v. Fox*, 882 S.W.2d 214, 217 (Mo.App. W.D.1994); *See also Johnson*, 81 S.W.3d at 215 ("Circumstantial evidence may be used to prove both possession and awareness.").

■ "Actual possession of a substance is where the person has the substance on his person or within his easy reach and convenient control." *Rollett*, 80 S.W.3d at 521. "Constructive possession is where a person has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons." *Id.*

■ "A defendant who has exclusive control of property is deemed to have possession and control of any substance found on the property."[3] *Id.* In cases where there is joint control, however, a defendant is only deemed to have possession and control where additional evidence in the record connects him or her to the controlled substance. *Id.*

■ In cases involving joint control of an automobile, a criminal defendant is only deemed to have possession and control where sufficient additional evidence connects him to the controlled substance. *Johnson*, 81 S.W.3d at 215. "Such additional evidence includes: the presence of a large quantity of the substance at the scene where the defendant is arrested;

routine access to an area where controlled substances are found; nervousness exhibited during the search of the area; the subject of the controversy in plain view; commingling of the controlled substance with the defendant's personal belongings; and the conduct and statements made by the accused." *Id.* "The totality of the circumstances is considered in determining whether sufficient additional incriminating circumstances have been proved." *Rollett*, 80 S.W.3d at 521.

■ "The mere fact that [the defendant] was present in the vehicle where the items were found is not sufficient to make a submissible case." *Bristol*, 98 S.W.3d at 111. "The mere presence of the accused on shared premises where contraband is found is not enough circumstantial evidence to show ownership or possession." *State v. Kimberley*, 103 S.W.3d 850, 858 (Mo.App. W.D.2003). "Mere presence at a place where contraband is found is not enough to create an inference of control." *Id.* (citing *State v. Todd*, 70 S.W.3d 509, 521 (Mo.App. W.D.2002)). Accordingly, the State was required to present evidence, in addition to the fact that Chavez was sitting in a car in which a controlled substance was found, sufficiently connecting Chavez to the cocaine salts.

In arguing that it presented sufficient evidence in addition to Chavez's presence in the car to connect him to the cocaine salts, the State offers a couple of rather misguided arguments. The State argues that Chavez's act of closing the car door after he exited the vehicle demonstrates that he knew the cocaine salts were pres-

---

3. "Since our society recognizes the varied use of automobiles, the exclusive possession of premises rule has been modified when automobiles are involved because of 'the reality of the contemporary use of the automobile as a means of social accommodation.'" *State v. Johnson*, 81 S.W.3d 212, 215 (Mo.App. S.D.

2002) (quoting *State v. Allen*, 744 S.W.2d 865, 868 (Mo.App. W.D.1988) (quoting *State v. Bowyer*, 693 S.W.2d 845, 848 (Mo.App. W.D. 1985))). "In the case of automobiles the full effect of the exclusive possession rule is tempered by evidence of equal access by persons, other than the owner, to the vehicle." *Id.*

ent in the car and was trying to prevent the police from seeing them. This argument is inane. No evidence was presented indicating that there was anything unusual about the way Chavez exited the vehicle or closed the car door. After being told by the police that he was free to leave, Chavez simply opened the car door, got out of the vehicle, and closed the car door before walking away. The vast majority of people close the car door behind them after they exit a vehicle as a matter of common sense and courtesy. It is simply unreasonable to infer solely based upon this commonplace act that an individual is trying to hide something.

Likewise, we find no merit in the State's argument that Chavez's departure from the scene of the crime constitutes an incriminating circumstance. Both police officers on the scene testified that Chavez remained in the car, exhibiting no unusual behavior, until he was told by Officer Devault that he was free to go. At that point, Chavez exited the vehicle, closed the door, and started walking down the street. When he saw a fellow co-worker driving by, Chavez waved her down, asked for a ride, and rode off in that vehicle. None of the officer's testifying at trial indicated that there was anything significantly unusual about Chavez's behavior in leaving the scene. We simply do not believe any negative inference can be drawn simply from the fact that an individual left the scene of a crime after a police officer told him that he was free to go.

We next turn to the State's arguments that actually merit consideration. The State notes that the cocaine salts were found between the passenger seat and the car door, an area more accessible to Chavez than to Faulkner. Officer Masterson testified that he immediately saw the bag containing the cocaine salts upon opening the passenger side door. He testified that they were not pushed down or underneath the seat and were simply resting between the bucket seat and the door, next to where Chavez's legs and buttocks would have been. Accordingly, the jury could reasonably have found that the cocaine salts were in plain view of anyone entering the car through the passenger door and inferred that Chavez must have been aware of the presence of the cocaine salts in the car.[4]

Knowledge of the presence of a controlled substance alone, however, is insufficient to sustain a conviction based on possession, and the State must present evidence establishing that the defendant exercised control over the controlled substance. *State v. Morris,* 41 S.W.3d 494, 498 (Mo.App. E.D.2000). Therefore, we must consider the remaining evidence presented at trial to determine whether it supported an inference that Chavez exercised control over the cocaine salts.

Faulkner testified that, when he met Chavez at the bowling alley, Chavez was carrying a white plastic shopping bag. Faulkner stated that he did not know what was in the bag. Faulkner also testified that Chavez told him that he had "a lot of stuff on him" and that they "needed to get out of Northtown." Faulkner testified that he understood those statements to mean that Chavez had drugs on him. Faulkner also stated that the cocaine salts were not his and that the first time he ever

---

4. While Chavez presented evidence, through his own testimony and that of his sister, that he has vision problems with his left eye resulting from a childhood condition, the jury was not required to find that testimony credible or to afford it any weight. *See State v. Hobbs,* 106 S.W.3d 498, 509 (Mo.App. W.D.2003) ("Credibility and weight of testimony are matters for the jury to determine.") (internal quotations omitted).

saw the cocaine salts was when Officer Masterson pulled them out of the car.

While Chavez challenged the credibility of Faulkner's testimony at trial, the jury could reasonably have found Faulkner's testimony to be credible. "Credibility and weight of testimony are matters for the jury to determine." *State v. Hobbs*, 106 S.W.3d 498, 509 (Mo.App. W.D.2003).

In this same vein, the jury was not required to accept any of Chavez's testimony as true. Chavez testified at trial that the cocaine salts were not his and that he did not notice them when he got in and out of the car. Chavez denied ever making any comment about having "a lot of stuff" on him or about needing to "get out of Northtown." Chavez claimed that the shopping bag had contained CDs and some contact lens cleaner that he had purchased. The jury could reasonably have found Chavez's testimony uncredible and afforded it no weight.

When Chavez's statements to Faulkner are considered along with the fact that the drugs were found in plain view next to where Chavez had been seated in the car, the fact that Chavez had superior access to that part of the car than Faulkner, and the fact that Faulkner testified that the drugs were not his and that he had not seen them in the car prior to being pulled over by Officer Masterson, the evidence presented at trial sufficiently supports an inference that Appellant brought the cocaine salts into the car with him. This inference satisfies the control element of the possession charge.

While Chavez attempts to liken this case to two cases in which this Court found the evidence insufficient to support a possession conviction, *State v. Franco–Amador*, 83 S.W.3d 555 (Mo.App. W.D.2002) and *State v. Bristol*, 98 S.W.3d 107 (Mo.App. W.D.2003), both cases are significantly distinguishable from the case at bar. In both

*Franco–Amador* and *Bristol*, the controlled substance present in the vehicle was not in plain view and was not found in an area of the vehicle over which the defendant had superior control compared to the other occupants of the vehicle. *See Bristol*, 98 S.W.3d at 112; *Franco–Amador*, 83 S.W.3d at 556–57. Furthermore, no evidence was presented in either of those two cases indicating that the defendant had made any statements that could connect him to the controlled substance.

When viewed in its totality, the evidence presented at trial sufficiently establishes the requisite elements of possession of a controlled substance. Point denied.

In his second point, Appellant claims that the trial court committed plain error by allowing the State to argue to the jury during closing argument that it could convict Appellant even if it did not believe any of Faulkner's testimony. In relevant part, during the rebuttal portion of closing argument, the State offered the following statements:

> He testified—Mr. Chavez did—that Mr. Faulkner never reached across, never asked him to put anything over there, never threw anything on the side. You do not have to believe anything Mr. Faulkner said in this case to find the defendant guilty. You only have to use your own reason and common sense to say whose drugs would that [sic] have been and would the owner of the car have left his drugs on the passenger side door in that manner and left $10,000 worth of drugs sitting there? You don't have to believe a darn thing Mr. Faulkner said because it makes sense. That's why you're here, to use your reason and common sense to make a decision based upon the facts of the case. If you don't want to believe anything Faulkner says, it doesn't mean that the defendant is not

guilty of possessing those drugs. It makes sense that he is.

Appellant contends that by such argument the State improperly told the jury that it could convict Appellant based solely upon his mere presence in the car with the drugs.

 Having failed to object to this argument at trial or to include any claim of error related to these statements in his motion for new trial, Appellant failed to preserve any claim of error for review. *State v. Emmert*, 91 S.W.3d 177, 180 (Mo. App. S.D.2002). Because his claim is not properly preserved for appeal, Appellant asks this court to exercise its discretion to review for plain error.

 " 'The plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review.' " *State v. Boyd*, 954 S.W.2d 602, 606 (Mo.App. W.D.1997) (quoting *State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983)). Relief under the plain error rule may only be obtained where the defendant establishes that an error occurred at trial substantially affecting his rights and that a manifest injustice or miscarriage of justice would result if that error were left uncorrected. *State v. Stewart*, 18 S.W.3d 75, 84 (Mo.App. E.D.2000). " 'The defendant bears the burden of showing that an alleged error has produced such a manifest injustice,' " and "[m]ere allegations of error and prejudice will not suffice." *Boyd*, 954 S.W.2d at 606 (quoting *State v. Isa*, 850 S.W.2d 876, 884 (Mo. banc 1993)).

 "Missouri appellate courts 'rarely grant relief on assertions of plain error as to closing argument ... because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of

error by such intervention.' " *State v. Weicht*, 23 S.W.3d 922, 930 (Mo.App. S.D. 2000) (quoting *State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo. banc 1988)). " '[E]rrors occurring in closing arguments justify relief under plain error only when the errors are determined to have a decisive effect on the jury.' " *State v. O'Haver*, 33 S.W.3d 555, 561 (Mo.App. W.D.2000) (quoting *State v. Cruz*, 971 S.W.2d 901, 903 (Mo.App. W.D.1998)). "In order to have a decisive effect, there must be a reasonable probability that, had the comments not been made, the verdict would have been different." *State v. Kee*, 956 S.W.2d 298, 303 (Mo.App. W.D.1997). " 'The burden is on the defendant to prove the decisive significance.' " *State v. Schnelle*, 7 S.W.3d 447, 456 (Mo.App. W.D.1999) (quoting *State v. Parker*, 856 S.W.2d 331, 333 (Mo. banc 1993)). Accordingly, "to be entitled to relief under plain error review Defendant must establish that the improper argument had a decisive effect on the jury by showing that, 'in absence of these comments, the verdict would have been different.' " *Stewart*, 18 S.W.3d at 84. "Because trial strategy looms as an important consideration in any trial, assertions of plain error concerning matters contained in closing argument are generally denied without explication." *State v. Vaughn*, 32 S.W.3d 798, 800 (Mo.App. S.D.2000) (internal quotations omitted).

 We find no error, plain or otherwise. While Appellant claims that the State's argument might have caused the jury to believe that Appellant's mere presence in the vehicle was sufficient to find him guilty, that was not the proposition being advanced by the State. The State was simply arguing that inferences related to Appellant's knowledge of and control over the cocaine salts could properly be drawn from the circumstances and the location of the cocaine salts within the vehi-

cle regardless of whether or not the jury found Faulkner's testimony credible. The State is allowed to argue reasonable inferences from the evidence. *Middleton v. State,* 103 S.W.3d 726, 742 (Mo. banc 2003).

Moreover, even if we were to find error, Appellant has failed to establish that the State's argument had a decisive effect on the jury. The jury was properly instructed on the elements necessary to prove possession of a controlled substance and was further instructed that they must be convinced beyond a reasonable doubt that all of those elements had been proven in order to convict Appellant. The jury was also instructed that it was solely within the province of the jury to determine the credibility of witnesses and the weight to be assigned to any evidence presented at trial. Absent a showing to the contrary, we must presume that the jury properly followed the trial court's instructions in rendering its verdict. *State v. Love,* 88 S.W.3d 511, 520 (Mo.App. S.D.2002).

In short, we find no error in the trial court's decision not to *sua sponte* interfere with the State's argument. Moreover, even if an error had been committed, Appellant has failed to demonstrate that argument offered by the State had a decisive effect on the verdict. Point denied.

The judgment is affirmed.

All concur.