

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD84329 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | September 27, 2022 |
| TERRY JOE BERWALDT, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Saline County, Missouri**
The Honorable Dennis Allen Rolf, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Anthony Rex Gabbert, Judge, and Jeffrey C. Keal, Special Judge

Terry Berwaldt ("Berwaldt") appeals from his conviction in the Circuit Court of Saline County ("trial court"), following a jury trial, of one count of possession of a controlled substance (methamphetamine), section 579.015[1] (Class D felony), and one count of unlawful possession of drug paraphernalia (syringe), section 579.074 (Class A Misdemeanor), after having been found to be a prior offender.  On appeal, Berwaldt argues the trial court erred in convicting him on both counts because the State's evidence was

---

[1] All statutory references are to Revised Statutes of Missouri (2016), as supplemented through December 7, 2018, unless otherwise indicated.

insufficient to show that he possessed the controlled substance and drug paraphernalia in that the evidence failed to establish who owned the methamphetamine and syringe found in Berwaldt's bedroom and when Berwaldt had last been in the home in relation to others arrested inside the residence at the time of the execution of the search warrant.[2]  Finding no error, we affirm.

## Factual Background[3]

On December 7, 2018, the Lafayette County Drug Task Force executed a search warrant on Berwaldt's residence in Waverly, Saline County, Missouri.  Officers arrived at Berwaldt's two-story house (consisting of a main floor and a finished basement) early in the morning and found five individuals present:  Berwaldt, Ella Rainey ("Rainey"), Josh Gilpin, Corey Gilpin, and Jennifer White ("White").  Berwaldt was located in his pick-up truck that was parked inside the garage of the residence.  Rainey was found in the hallway of the residence, and Deputy Barker of the Lafayette County Drug Task Force testified that he spoke with Rainey during the search.  Rainey stated that her bedroom and Berwaldt's bedroom were both on the main floor of the house.  Berwaldt's bedroom was also identified by its hospital-style bed and wheelchair accessible shower in the attached bathroom, as Berwaldt is wheel-chair bound.  Josh and Corey Gilpin each had a separate bedroom in the basement of the house, and White did not live at the residence but was there visiting Corey Gilpin.

---

[2] Berwaldt properly presents a separate point relied on alleging trial court error regarding both the possession of controlled substance and drug paraphernalia.  Because he argues insufficient evidence in both points, we address the arguments in a single analysis.

[3] On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict. *State v. Peal*, 393 S.W.3d 621, 623 n.1 (Mo. App. W.D. 2013).

The State's evidence consisted of the testimony of Deputy Barker and certain exhibits including photographs. Deputy Barker testified that each bedroom in Berwaldt's house was searched, and the items collected from the search were recorded on an inventory list and photographed. Multiple items were collected from Berwaldt's bedroom. A clear bag containing methamphetamine was found in a small area of the couch in Berwaldt's bedroom. Eight large white pills were found in a small black pouch and were later identified as gabapentin, a prescription drug. A loaded syringe was also located in Berwaldt's bedroom. Deputy Barker testified that he found a small, camo pouch in Berwaldt's bedroom that contained a spoon with residue that field-tested positive for methamphetamine.

Deputy Barker initially photographed each room as it appeared when officers arrived, and after the search, he placed the collected items together on the bed to be photographed and labeled. However, Deputy Barker testified that the pre-search photograph he took of Berwaldt's room was accidentally deleted. The photographs admitted at trial showing Berwaldt's bedroom after the search show primarily men's clothing in the closet, and the photographs showing Rainey's bedroom, closet, and bathroom on the same floor as Berwaldt's bedroom show primarily female clothing.

Various items were also collected from other locations in the house. A clear plastic bag of methamphetamine was found on Rainey's person in her bra, and clear baggies were found in Rainey's bedroom nightstand drawer. Josh Gilpin's bedroom and Corey Gilpin's bedroom both contained a "bag of meth," marijuana, baggies, digital scales, and several loaded syringes. Deputy Barker also testified that he observed extensive security features

3

at the residence, including multiple security cameras, live feeds of the outside of the home displayed on a TV in Rainey's bedroom, and numerous cables located in the basement. Deputy Barker testified that, in his experience, extensive security can be an indicator of paranoia among drug users and dealers.

Deputy Barker spoke with Berwaldt at the Saline County Courthouse after the search.[4] Berwaldt confirmed that he lived at the residence and was the owner of the home. Berwaldt also confirmed that his bedroom was located on the first floor and contained the hospital-style bed and bathroom with a wheelchair-accessible shower. Deputy Barker asked Berwaldt if he currently uses methamphetamine, and Berwaldt stated that he currently uses "a teener a week," which Deputy Barker explained is 1.75 grams of methamphetamine.

The jury found Berwaldt guilty of one count of possession of a controlled substance, section 579.015, and one count of unlawful possession of drug paraphernalia, section 579.074. Berwaldt was sentenced to a term of eight years imprisonment on count I and a concurrent term of 90 days in the county jail on count II, both as a prior offender. This appeal follows.

**Standard of Review**

"When reviewing the sufficiency of the evidence to support a conviction and a trial court's denial of a motion for judgment of acquittal, our task is to determine whether sufficient evidence was presented at trial to permit a reasonable fact finder to find the

---

[4] Deputy Barker testified that he attempted to record his interview with Berwaldt but was unsuccessful because the batteries in his recorder failed during the interview.

4

defendant's guilt beyond a reasonable doubt." *State v. Glaze*, 611 S.W.3d 789, 794 (Mo. App. W.D. 2020). "In a review of whether sufficient evidence existed from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt, this Court accepts as true all the evidence favorable to the verdict, including all favorable inferences properly drawn from the evidence, and disregards all evidence and inferences to the contrary." *State v. Cline*, 808 S.W.2d 822, 823 (Mo. banc 1991). "This is not an assessment of whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *State v. Zetina-Torres*, 482 S.W.3d 801, 806 (Mo. banc 2016) (internal quotations omitted).

**Analysis**

Berwaldt argues the trial court erred in convicting him on both counts because insufficient evidence was presented to establish Berwaldt's possession of the controlled substance and drug paraphernalia. "A person commits the offense of possession of a controlled substance if he or she knowingly possesses a controlled substance[.]" Section 579.015.1. As to count II:

> A person commits the offense of unlawful possession of drug paraphernalia if he or she knowingly uses, or possesses with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body, a controlled substance or an imitation controlled substance in violation of this chapter or chapter 195.

5

Section 579.074.1. "Possession" or "possessing a controlled substance" is statutorily defined:

> [A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his or her person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint[.]

Section 195.010(38). The same analysis is employed when reviewing the question of whether a defendant possessed drug paraphernalia as when determining whether a defendant had possession of a controlled substance. *State v. Goff*, 439 S.W.3d 785, 791 (Mo. App. S.D. 2014). To sustain a conviction for possession of a controlled substance, the State must prove conscious and intentional possession of the substance, either actual or constructive, and awareness of the presence and nature of the substance. *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992). "Possession and knowledge may be proved by circumstantial evidence." *Zetina-Torres*, 482 S.W.3d at 807.

Because Berwaldt did not have a controlled substance or paraphernalia on his person or within easy reach or convenient control when searched, the State argued a theory of constructive possession to the jury. Thus, the State was required to present enough evidence such that a reasonable juror could conclude that although not in actual possession, Berwaldt had the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons. Section 195.010(38). In analyzing constructive possession of a controlled substance, there is "no

6

precise formula, and we look to the facts of each case in determining if the totality of the circumstances supports a finding of possession." *State v. Kerns*, 389 S.W.3d 244, 248 (Mo. App. S.D. 2012). "Absent proof of actual possession, constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *Purlee*, 839 S.W.2d at 588. "Thus, proof of constructive possession requires, at a minimum, evidence that defendant had access to and control over the premises where the substance was found." *Id.* "Defendant's *exclusive* control of the premises is enough to raise an inference of possession and control of the substance. *Joint* control of the premises, however, requires some further evidence or admission connecting the accused with the illegal drugs." *Id.*

Here, the State made a submissible case to the jury that Berwaldt had constructive, sole possession of a controlled substance and drug paraphernalia and that Berwaldt had knowledge of such possession. Officer Barker testified that he collected items from each room of the house during the search. From Berwaldt's bedroom, Officer Barker collected a baggie of methamphetamine located in a couch in the bedroom, a camo pouch containing a spoon with residue that field-tested positive for methamphetamine, a small black bag that contained prescription drugs, and a loaded syringe. Berwaldt argued in his reply brief and at oral argument that, because there were five people in the house when police arrived, and because Berwaldt was only in the house's garage rather than in a room in which drugs were found, this case is analogous to *State v. Barber*, 635 S.W.2d 342 (Mo. 1982). In *Barber*, the house containing the drugs, which held eight occupants at the time police arrived, was owned by the city and rented by one of the house's occupants. *Id.* at 344. Barber was

7

present in the room where a large quantity of drugs were found, but there was no evidence that Barber lived at the house, that he had ever been to the house before, or for how long Barber had been at the house or in that particular room when police arrived. *Id.* Our Supreme Court concluded that there was insufficient evidence based upon these facts to support Barber's conviction for possession. *Id.* at 345. In sharp contrast to *Barber*, in this case Berwaldt admitted to Officer Barker that he currently uses 1.75 grams of methamphetamine per week, and Berwaldt admitted that he owned the home and that the bedroom searched on the main floor of the house with the hospital-style bed was his bedroom. Further, the State presented sufficient evidence for a reasonable juror to find that Berwaldt had sole possession of the controlled substance and drug paraphernalia. Although Berwaldt lived in the residence with three other people, the evidence established that each person had his or her own bedroom. Each resident in the home identified Berwaldt's bedroom on the main floor, which contained a hospital-style bed and wheelchair-accessible shower. The photographs of Berwaldt's room following the search show generally men's clothing which, when contrasted with the female clothing in Rainey's room on the same floor, indicate exclusive control of the bedroom, giving rise to an inference of sole possession. *See Cline*, 808 S.W.2d at 824 (holding the male defendant had exclusive control of a dresser in a shared bedroom because "[t]he general contents of the dresser were men's clothing.").

Berwaldt argues both sole possession and joint possession must be analyzed by this Court on appeal because the jury instruction for each count did not delineate between the two types of possession. However, the jury instruction stated, "Possession may also be

8

sole or joint. If one person alone has possession of a substance, possession is sole. If two or more persons share possession of a substance, possession is joint." Sufficient evidence was presented to support a reasonable inference of sole possession because the controlled substance and paraphernalia were found in Berwaldt's personal bedroom, which he occupied alone, and which is thus sufficient to give rise to an inference that Berwaldt had exclusive control over the drugs in his own room.

Berwaldt argues that the State presented insufficient evidence of possession because Officer Barker could not identify exactly where the black bag and camo pouch containing drugs and the syringe were located within Berwaldt's room. On cross-examination, Officer Barker stated he did not remember whether the small bags were located in other bags within the room, and during the search he did not inquire into who owned the small bags found in Berwaldt's room. Further, Berwaldt's trial counsel ("trial counsel") highlighted other objects seen on the bed in the photographs of the items collected from Berwaldt's room that appear more feminine in nature, such as a leopard-print object.[5] Trial counsel also cross-examined Deputy Barker regarding the deleted photograph of Berwaldt's room from before the search and the absence of a recording of Berwaldt's interview with Deputy Barker that occurred at the Saline County Courthouse after the search. All of these arguments go to the persuasiveness of the evidence, not the sufficiency of the evidence. In a sufficiency of

---

[5] Berwaldt also notes that additional "feminine" items were seen on the bed in Berwaldt's room in the photos following the search, such as lipstick and crayons. However, the photos Berwaldt notes showing these items were admitted at sentencing, not trial. The photos of Berwaldt's bed at trial showing the collected items from the search do show a leopard-print object on the bed. However, this alone is insufficient to negate Berwaldt's knowing possession of the controlled substance and paraphernalia. And the jury was aware of the leopard print object, as demonstrated through trial counsel's thorough cross-examination of Deputy Barker.

9

the evidence challenge on appeal, viewing the evidence in this light would violate our standard of review to view all facts and inferences drawn therefrom in the light most favorable to the jury's verdict and to disregard all evidence and inferences to the contrary. The State presented sufficient evidence of possession in that Deputy Barker testified that methamphetamine and the loaded syringe were found within Berwaldt's own personal bedroom which he alone used. *See State v. Steward*, 844 S.W.2d 31, 34 (Mo. App. W.D. 1992) ("Many of the drug related items were found in defendant's bedroom."). Berwaldt admitted to being the only occupant of that bedroom, and he admitted to currently using methamphetamine each week. Each bedroom of the house was searched, and each individual bedroom contained controlled substances and paraphernalia. A reasonable juror could conclude that each resident of the house, including Berwaldt, kept his or her own drugs in his or her own room each for their own personal use. And even though the State did not establish when Berwaldt had last been inside the house, Berwaldt was found in his pick-up truck in the garage of the house, he admitted that the bedroom in which the relevant controlled substance and paraphernalia were found was his own bedroom, and the personal contents were apparent through the photographs of his room following the search.

Berwaldt brings the Court's attention to two cases in particular in which convictions for possession of a controlled substance were reversed based on insufficient evidence. Both cases are easily distinguishable from this case. Berwaldt first cites *State v. Bristol*, 98 S.W.3d 107, 110 (Mo. App. W.D. 2003), in which the defendant was driving a vehicle he did not own with two other occupants in the vehicle. After a canine alerted to the presence of drugs, the officer searched the vehicle and found a baggie of cocaine wedged

10

in between the driver's seat and the center console as well as a metal pipe containing a filter and burnt residue under the driver's seat. *Id.* at 110. Because the defendant did not have exclusive control over the vehicle, the State was required to show, under a theory of joint possession, some incriminating circumstance to further indicate the defendant had knowledge and control over the controlled substance. *Id.* at 111. The Court held the State failed to meet its burden because there were two other occupants of the vehicle who had access to the console area where the drugs were found, the defendant did not own the car, and the defendant had only been in possession of the car for less than twenty-four hours. *Id.* In so holding, we noted that "[p]roximity to the contraband alone fails to prove ownership." *Id.* However, in this case, the evidence did not show mere proximity. The controlled substance and paraphernalia were found in Berwaldt's own bedroom of which he had sole possession in a house that he owned. Further, Berwaldt admitted to using methamphetamine every week. A reasonable juror could conclude from the evidence presented at trial, that the drugs and syringe in Berwaldt's bedroom were in his possession and under his exclusive control rather than Berwaldt merely being in proximity to the controlled substance and paraphernalia.

Berwaldt also cites *State v. Drabek*, 551 S.W.3d 550 (Mo. App. E.D. 2018). In *Drabek*, the defendant's conviction was reversed because there was insufficient evidence he possessed the methamphetamine found on his front porch. *Drabek*, 551 S.W.3d at 554. Although the defendant solely occupied the home, the Court held that a front porch, "being on the outside of a home, adjacent to a home's entrance, can by its very nature be an area accessible to one and all." *Id.* at 558. The State failed to show additional incriminating

11

circumstances of joint possession, and the conviction was reversed on this basis. Contrasting our case to *Drabek*, the personal nature of Berwaldt's bedroom when compared to the accessibility of a front porch becomes even more apparent. The record shows, by the contents of the bedroom and by Berwaldt's own admission, that Berwaldt personally and solely occupied this bedroom, and it was not a shared space by other residents. *See Cline*, 808 S.W.2d at 824. The record also shows that, at the time of the search, Berwaldt regularly used methamphetamine each week. This suffices to allow a reasonable juror to conclude Berwaldt solely and knowingly possessed the controlled substances and drug paraphernalia which gave rise to his charges. Accordingly, the trial court did not err in convicting Berwaldt on both counts.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur

12