**STATE of Missouri, Plaintiff–Respondent,**

v.

**Robert C. AMES, Defendant–Appellant.**

No. 23514.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 29, 2001.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 16, 2001.

Roger C. Jones, Thad C. Burrows, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Presiding Judge.

Robert C. Ames (defendant) was convicted, following a jury trial, of the class C felony of possession of methamphetamine, a controlled substance. § 195.202, RSMo 1994. He appeals contending the evidence was insufficient to support the verdict and that the trial court erred in permitting testimony that defendant's vehicle contained chemicals that were precursor chemicals in methamphetamine manufacture. This court affirms.

Officers Chuck Niess and Chad Allison of the Joplin Police Department were on patrol when they observed a white Chevrolet El Camino operated by defendant. They pulled behind the vehicle and observed that the brake light on the right side of the vehicle was working intermittently and that the vehicle had very loud mufflers. The officers activated the emergency lights on their patrol car in order to stop defendant's vehicle because of its loud pipes and faulty brake light. They observed a passenger in the vehicle with defendant. Officer Niess was asked the following questions and gave the following answers about what he observed:

Q. ... And after you activated your lights, did you observe anything going on inside the vehicle?

A. The passenger started moving around quite a bit. The vehicle was slow in pulling over. It did not immediately pull to the right and stop.

Q. Now, how far away were you from the vehicle at that time?

A. We were about two car lengths back.

Q. And then did you stop the vehicle?

A. Yes.

Officer Niess and Officer Allison got out of their patrol car. Officer Niess went to the driver's side of defendant's vehicle.

Officer Allison went to the passenger side. Officer Niess saw a can of paint thinner or Coleman fuel behind the driver's seat. Officer Allison saw a container of paint thinner on the floorboard behind the seats, a container of acetone and three containers of HEET.

Officer Allison asked defendant if he and Officer Niess could search defendant's vehicle. Officer Allison explained, "I just asked if it would be all right if we searched his vehicle and explained that some of the items that drew my suspicions were the jug of acetone and the other chemicals." Defendant gave permission for the search.

Officer Allison was asked the following questions and gave the following answers about the search.

Q. ... And where did you search?

A. I immediately went to the items that I recognized and removed them from the vehicle at that point. Then I began searching the center console area.

\* \* \*

Q. ... How far is that center console away from the driver?

A. A few inches.

Q. A few inches? And you searched the center console at that time, is that correct?

A. Yes, I did.

Officer Allison found a straw on the console of the vehicle approximately two inches long. He also found a Coke bottle at the center console area of the vehicle. He explained, "When I first picked it up, it looked like there was ice or something in the Coke bottle." When Officer Allison looked more closely, he discovered the item inside the bottle was "a baggie" he characterized as "consistent in [his] previous past with working with drugs as known to usually package methamphetamine." The baggie was wet. There was moisture on its inside. Officer Allison described the size of the baggie as "[p]robably inch and a half, two inches, by two inches." He testified, over defendant's objection, that based on his experience, he believed the baggie and the straw were items used in the ingestion of controlled substances.

Officer Allison was asked on cross-examination if the Coke bottle was under the passenger's seat. He answered, "It was in the, on the, next to the hump in the passenger's side, yes."

An employee of Missouri Southern State Regional Crime Lab testified about tests performed on the Coke bottle and its contents. He was asked the following questions and gave the following answers:

Q. ... Where was this bottle or where was this bag in relationship to this bottle?

A. The bottle—excuse me. Excuse me. The bottle—the bag was inside the bottle.

\* \* \*

Q. ... This is the report of your analysis of this item right here. Can you tell us what the results of your examination were?

A. Yes, sir. The results of my examination reported as stated in this lab report state that the controlled substance methamphetamine was demonstrated in a representative portion of the liquid contained in that bottle.

Q. Okay. When you say a representative portion, that means you're taking something out and examining that?

A. Yes, sir.

Q. And based on that, the entire contents had the same substance in it, is that correct?

A. That's correct.

Q. Were you able to perform an independent analysis of this bag to determine what was in it?

A. No, sir, I was not.

Q. And why is that?

A. When I received the bottle into the lab, the bag was inside the bottle and this bag was open. The liquid that was initially in this bottle was also in the bag, so I could not make any determination as to what the initial contents of the bag were.

Officer Niess testified that several chemicals seized during the search of defendant's vehicle were "generally used as precursor chemicals by meth cooks to clean the methamphetamine in the final process." The items he described as precursor chemicals were a can of Coleman fuel, or Wal Mart brand of camp fuel, some paint thinner, and three bottles of HEET. He was then asked if the items found in the vehicle were components in the manufacture of methamphetamine. He answered, "They can be, yes."

Defendant's points on appeal will be considered in reverse order. Point II goes to the admissibility of certain evidence and Point I contends the evidence presented was not sufficient to sustain defendant's conviction. The question of whether the evidence to which Point II is directed was admissible impacts the question of whether there was sufficient evidence from which the jury could have found defendant guilty.

Defendant's Point II is directed to the trial testimony that stated "items found in the [defendant's] vehicle were precursor chemicals in the process of cooking methamphetamine." Point II argues that because defendant was not charged with manufacture of methamphetamine, the trial court erred in overruling his objections to that testimony and in denying his motion for new trial.

■ Defendant's objection to evidence concerning the significance of the items observed in defendant's vehicle, the Coleman fuel, or Wal–Mart brand of camp fuel, some paint thinner, and three bottles of HEET, was that the evidence was irrelevant and immaterial and was evidence of other crimes. His motion for new trial asserted that the trial court erred in not sustaining the objections because "such evidence was speculative, improper evidence of other crimes and not relevant or material to any issue in the case."

■ A trial court has broad discretion in ascertaining relevance and admissibility of evidence. *State v. Hayes*, 15 S.W.3d 779, 785 (Mo.App.2000). This court will not interfere with a ruling on admissibility of evidence absent a clear showing of abuse of discretion. *Id.*

■ Evidence of contemporary possession of drug paraphernalia with possession of a controlled substance is relevant and admissible to show a defendant knowingly and intentionally possessed the controlled substance. *State v. Dowell*, 25 S.W.3d 594, 603 (Mo.App.2000). It is admissible to show the controlled substance was possessed with full knowledge of its illegal character. *State v. Flenoid*, 838 S.W.2d 462, 467 (Mo.App.1992).

■ Drug paraphernalia includes "all equipment, products and materials of any kind which are used, intended for use, or designed for use, in ... manufacturing, compounding, converting, producing, processing, preparing ... a controlled substance ... in violation of sections 195.005 to 195.425." § 195.010(17), RSMo Cum. Supp.1998. The fact that the items to which Point II refers can be personal items with personal uses does not preclude their having nexus with criminal behavior. *State v. Mitchell*, 20 S.W.3d 546, 557 (Mo. App.2000). Such items relate to a defen-

dant's awareness of the presence and nature of controlled substances found at the same location. *State v. Yahne,* 943 S.W.2d 741, 746 (Mo.App.1997). "Evidence which is colorless standing alone gains a new complexion when considered with other facts that are proved, and in turn, may corroborate the conclusions drawn from other facts." *U.S. v. Wood,* 834 F.2d 1382, 1386 (8th Cir.1987).

Defendant was charged with possession of methamphetamine. There was testimony that the chemicals seized from his vehicle were components in the manufacture of methamphetamine. The trial court did not abuse its discretion in overruling defendant's objections to the testimony concerning the items seized from defendant's car and in denying his motion for new trial. Point II is denied.

■ The remaining issue is that presented in Point I, that the evidence was not sufficient to support defendant's conviction for possession of methamphetamine, a controlled substance. Defendant offered no evidence at the close of the state's case. Defendant asserts the trial court erred in denying his motion for acquittal at the close of the state's case and the close of all the evidence because the evidence "failed to prove ... [defendant] knowingly and intentionally possessed a controlled substance."

■ On a challenge to the sufficiency of the evidence, appellate review is limited to determining whether there is sufficient evidence from which a reasonable juror could find defendant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989).

To sustain a conviction for possession of a controlled substance, the State must prove (1) conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the

presence and nature of the substance. Both possession and knowledge may be proved by circumstantial evidence.

*State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992).

When the arresting officers activated their emergency lights behind defendant's vehicle, there was a delay in defendant stopping his vehicle. He was "slow in pulling over" after he had been signaled to do so. Defendant continued driving while the passenger, seated adjacent to defendant, moved around and bent over as if he were trying to conceal something.

The Coke bottle that contained methamphetamine, together with a baggie of the type used to store drugs, was found in the console area of the vehicle "[a] few inches" from the driver's area of the car. Defendant owned the vehicle. As discussed in disposing of Point II, there were items in the passenger compartment of the vehicle, immediately behind its seats, commonly used in the process of manufacturing methamphetamine, the controlled substance that was in the Coke bottle. There was sufficient evidence for the jury to have concluded that the controlled substance, the methamphetamine, was in the joint possession of defendant and the passenger in his motor vehicle. The totality of the circumstances was sufficient for the jury to have found defendant guilty of possession of methamphetamine beyond a reasonable doubt. Point I is denied. The judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur