**STATE of Missouri, Plaintiff–Respondent,**

v.

**Tony A. BUFORD, Defendant–Appellant.**

No. SD 29601.

Missouri Court of Appeals,
Southern District,
Division One.

March 3, 2010.

Rehearing Denied March 25, 2010.

Application for Transfer Denied
May 25, 2010.

Ellen H. Flottman, Columbia, MO, Attorney for Appellant.

Chris Koster, Attorney General, and Dora A. Fichter, Assistant Attorney General, of Jefferson City, MO, Attorney for Respondent.

DON E. BURRELL, Judge.

Tony Buford ("Defendant") was convicted, following a bench trial, of the class C felony of possession of a controlled substance and received a sentence of three years' imprisonment in the Department of Corrections.[1] Defendant now appeals that conviction, alleging the trial court should have granted his motion for judgment of acquittal because the State's evidence was insufficient to prove him guilty beyond a reasonable doubt. We agree and reverse his conviction.

**Facts[2]**

The State's evidence consisted solely of the testimony of Officer Nelson Kibby of the Springfield Police Department ("Officer Kibby"). On November 23, 2004, just before midnight, Officer Kibby conducted a traffic stop on a vehicle that was being operated with a "busted" taillight. Defendant was in the right front passenger seat of that vehicle. The owner of the vehicle, Ronald Lewis, was in the driver's seat, and a third, unidentified individual was in the back seat.

Officer Kibby noted that all three occupants were acting very nervous, so he checked to see if any of them had outstanding warrants. That check revealed that all three had active warrants. Officer Kibby placed each occupant under arrest and searched their persons. Defendant did not have any drugs or drug paraphernalia on his person. Officer Kibby then searched the vehicle.

During that search, Officer Kibby found a "yellow and white rock, which is consistent with crack cocaine" inside a plastic bag located between the right front seat and the passenger door.[3] He also found loose rocks of crack cocaine in plain view on the floorboard where Defendant's feet would have been. Other than the drugs, the car was very neat and clean. Both the loose cocaine rocks on the floorboard and the rock found in the baggie between the seat and the door would have been within the reach of anyone seated in the front passenger seat. Officer Kibby had no way of knowing how long Defendant had been in the vehicle before it was stopped.

1. *See* section 195.202. Unless otherwise indicated, all statutory references are to RSMo 2000.

2. "When reviewing the sufficiency of the evidence, we review all evidence and inferences reasonably draw[n] from the evidence in the light most favorable to the verdict and disregard all contrary evidence and inferences." *State v. Burse*, 231 S.W.3d 247, 251 (Mo.App. E.D.2007). Our recitation of the relevant facts is presented in accordance with that standard.

3. The parties stipulated to the admission of a lab report that revealed the substance to be cocaine base, a Schedule II controlled substance. *See* section 195.017.

Officer Kibby *Mirandized*[4] Defendant and interviewed him at the jail. During that interview, Defendant told Officer Kibby either that Officer Kibby (1) "knew who those drugs belonged to" or (2) "knew where those drugs came from." Defendant specifically denied that the drugs belonged to him.

When the State rested its case, defense counsel moved for a judgment of acquittal, which the trial court denied. Defendant presented no evidence. In its closing argument, the prosecutor admitted, "Even though he might not have bought the drugs or—they were probably not his drugs or not, I don't know—but I know that he had knowledge and control of the drugs, which is possession."

The trial court took the case under advisement and allowed the parties ten days to submit case law relevant to the question of whether the State had presented sufficient evidence to support a conviction. Just over four months later, the trial court announced a guilty verdict and thereafter sentenced Defendant as indicated above.

### Analysis

#### Standard of Review

 "In reviewing a challenge to sufficiency of the evidence, this Court must determine whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt." *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001). "The standard of review in a bench-tried case is the same as in a jury-tried case." *State v. Burse*, 231 S.W.3d 247, 251 (Mo.App. E.D. 2007). "We disregard contrary inferences, unless they are such a natural and logical

extension of the evidence that a reasonable juror would be unable to disregard them." *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993). "The trier of fact determines the credibility of the witnesses, and may believe all, some or none of the testimony of a witness." *Burse*, 231 S.W.3d at 251. "The Court may 'not supply missing evidence, or give the [State] the benefit of unreasonable, speculative, or forced inferences.'" *Whalen*, 49 S.W.3d at 184 (quoting *Bauby v. Lake*, 995 S.W.2d 10, 13 n. 1 (Mo.App. E.D.1999)). The function of this court "is not to reweigh the evidence, but only to determine if the [conviction] is supported by sufficient evidence." *Burse*, 231 S.W.3d at 251.

#### Possession of a Controlled Substance

Section 195.202.1 provides that "it is unlawful for any person to possess or have under his control a controlled substance." And, "[a]ny person who violates this section with respect to any controlled substance except thirty-five grams or less of marijuana is guilty of a class C felony." Section 195.202.2.

Section 195.010(32) sets forth what constitutes possession:

a person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it.[5] Possession may also be sole

4. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. In the instant case, a literal reading of the statute would indicate that Defendant would have had "actual possession" of the controlled substance because it was within his

or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint[.]

■■ In order to sustain a conviction for possession of a controlled substance, "the state must prove two elements: (1) that [the defendant] had conscious and intentional possession of the controlled substance, either actual or constructive, and (2) that [he] was aware of the presence and nature of the substance." *State v. West*, 21 S.W.3d 59, 63 (Mo.App. W.D.2000). It is necessary to prove "that the defendant both knew the nature of the presence of the substance and that he had some conscious control over it." *State v. Bowyer*, 693 S.W.2d 845, 847 (Mo.App. W.D.1985). "The possession prong and the knowledge prong of the charged offense are not entirely independent, in that both require proof of the defendant's knowledge of the presence of the controlled substance." *State v. Gonzalez*, 235 S.W.3d 20, 26 (Mo. App. S.D.2007).

■ "In a case where an accused is in exclusive control of premises, the law makes the inference that a contraband substance found there also rests within his possession and control." *Bowyer*, 693 S.W.2d at 847. However, in a case "where premises are shared, a like inference of possession of contraband does not arise in the absence of additional circumstances to inculpate the accused." *Id.* "The State must present some incriminating circumstance that implies the accused knew of the presence of the drugs and the same were under his control." *State v. Smith*, 11 S.W.3d 733, 736–37 (Mo.App. E.D.1999). "A joint control situation does not preclude a finding of possession so long as further evidence connects the defendant to the illegal substances." *State v. Millsap*, 244 S.W.3d 786, 788 (Mo.App. S.D.2008). Because "[t]hese principles, developed in the context of premises, govern with a like validity to other occupants and enclosures—such as the driver and occupants of a motor vehicle[,]" *Bowyer*, 693 S.W.2d at 848, we will compare and contrast the evidence adduced in the instant case with that adduced in prior cases involving the possession of illegal drugs in both homes and automobiles.

■ "In cases involving joint control of an automobile, 'a defendant is deemed to have both knowledge and control of items discovered within the automobile, and, therefore, possession in the legal sense, where there is additional evidence connecting him with the items.'" *State v. Woods*, 284 S.W.3d 630, 639 (Mo.App. W.D.2009) (quoting *State v. Sanderson*, 169 S.W.3d 158, 164–65 (Mo.App. S.D. 2005)).

Additional incriminating circumstances that will support an inference of knowledge and control include the following:

"easy reach and convenient control" in that the contraband was lying within an arm's reach of where he had been riding in the vehicle. However, our cases seem to blend the concepts of "actual" and "constructive" possession when there are multiple occupants inside a vehicle, presumably because a sole individual may easily be seen as actually possessing an item located next to him while actual possession might not exist when the item is located within the reach of two or more individuals. Also, the minimum amount of possession required to support a conviction is "constructive possession." *State v. Smith*, 11 S.W.3d 733, 736 (Mo.App. E.D. 1999) ("Constructive possession is adequate to support a conviction when other facts support an inference of defendant's knowledge of the presence of the substance"); *see also State v. Harris*, 807 S.W.2d 528, 530 (Mo.App. W.D. 1991); *State v. Scott*, 298 S.W.3d 913, 917 (Mo.App. E.D.2009); *State v. Coleman*, 263 S.W.3d 680, 684 (Mo.App. S.D.2008); *State v. Chavez*, 128 S.W.3d 569, 574 (Mo.App. W.D. 2004).

Finding a large quantity of drugs in the vehicle; Finding drugs having a large monetary value in the vehicle; Easy accessibility or routine access to the drugs; The odor of drugs in the vehicle; The presence of the defendant's personal belongings in close proximity to the drugs; Making false statements in an attempt to deceive the police; The defendant's nervousness during the search; The defendant's flight from law enforcement; The presence of drugs in plain view; Other conduct and statements made by the accused; and the fact that the defendant rented the vehicle.

*Woods,* 284 S.W.3d at 640. "In determining whether the State has proven sufficient additional incriminating circumstances, we must consider the totality of the circumstances." *Id.*

### Proximity and Presence

"In cases involving joint control of an automobile, a criminal defendant is only deemed to have possession and control where sufficient additional evidence connects him to the controlled substance." *State v. Chavez,* 128 S.W.3d 569, 574 (Mo.App. W.D.2004). In *Gonzalez,* it was held that " 'presence in the car and proximity to the drugs alone was insufficient in a joint possession case.' " 235 S.W.3d at 30 (citing *State v. Bristol,* 98 S.W.3d 107, 111–12 (Mo.App. W.D.2003)). "Superior access to contraband that is accessible by two or more people is an incriminating fact." *Millsap,* 244 S.W.3d at 789. However, "[t]he mere fact that [the defendant] was present in the vehicle where the items were found is not sufficient to make a submissible case." *Chavez,* 128 S.W.3d at 574. "Nor does proximity to the contraband, alone, even as to a substance in plain sight, tend to prove ownership or possession as among several persons who share the premises." *Bowyer,* 693 S.W.2d at 847.

The cases that have affirmed convictions where the defendant was present in a vehicle with others and found in close proximity to the drugs all had additional incriminating facts that affirmatively demonstrated the defendant's awareness of the presence and illegal nature of those drugs. For example, in *Chavez,* the driver of the vehicle testified that the defendant had drugs on him and had asked for a ride to get out of town. 128 S.W.3d at 575. In *Millsap,* syringes and a glass pipe were found intermingled with the contents of the defendant's purse, which had spilled over onto the floor. 244 S.W.3d at 789. The defendant in *Millsap* was also the driver of the vehicle, the vehicle was rented in her name, and she was observed to have needle marks on her arm. *Id.*

In *State v. Ames,* 44 S.W.3d 825 (Mo. App. S.D.2001), the defendant was the driver of the vehicle and was deliberately slow in pulling over and stopping, presumably to give the passenger time to conceal the drugs—a fact that could be inferred from the officer's observation of the passenger bending down toward his feet as the vehicle slowed to a stop. *Id.* at 829. In *State v. Purlee,* 839 S.W.2d 584 (Mo. banc 1992), our high court looked to the amount of time the defendant was present in the car with the drugs to establish his knowledge of the presence of the drugs. *Id.* at 588. Specifically, the defendant had spent twelve hours inside a van that exuded an extremely powerful marijuana smell. *Id.* In reaching its decision, the Court analogized to *State v. Harris,* 807 S.W.2d 528 (Mo.App. W.D.1991), in which the defendant testified he did not see a container with cocaine solution and a syringe sitting at his feet although he had been sitting in the parked vehicle for two hours and had been observed bending down toward his

feet. *Purlee*, 839 S.W.2d at 588 (citing *Harris*, 807 S.W.2d at 530).

Cases of a similar nature where the evidence was held to be insufficient to support a conviction did not have these types of additional incriminating facts that made reasonable an inference that the defendant knew the drugs were present. For example, in *State v. Ingram*, 249 S.W.3d 892 (Mo.App. W.D.2008), a rock of cocaine was found in the driver's seat during a search incident to an arrest. *Id.* at 896. Because no evidence was presented that the rock was on the seat when the defendant exited the vehicle and an additional officer had been searching the vehicle but did not testify, there was insufficient evidence to conclude that the defendant had constructively possessed the cocaine. *Id.*

In *State v. Yarber*, 5 S.W.3d 592 (Mo. App. S.D.1999), the defendant was convicted of possession of a controlled substance when a small baggie was found secured to a bolt beneath the passenger seat in which he was riding. *Id.* at 592–93. In that case, the defendant had hired the driver of the vehicle to take him to a location to meet someone who claimed the defendant owed him money. *Id.* at 594. This court held that the evidence was insufficient to support an inference that the defendant had knowledge and possession of the drugs or that the defendant had hired the driver to take him to purchase drugs. *Id.* Because the cocaine was in a difficult place to see or find, it was unknown how long it had been there, and it was unknown how often or how long the defendant had been in the car, no reasonable juror could have found beyond a reasonable doubt that the drugs belonged to the defendant. *Id.*

In *State v. Ray*, 747 S.W.2d 765 (Mo. App. E.D.1988), three people were inside a vehicle pulled over for erratic driving. *Id.* at 766. The defendant was in the back seat. *Id.* The officer searched the vehicle after everyone had exited it and found a syringe and a spoon "laying on the back-seat" along with a "piece of snowpaper (paper used to pack cocaine) underneath the rear seat." *Id.* A bottle cap and spoon were found on the front seat, and another spoon and some brown envelopes were recovered from the glove compartment. *Id.* Testing revealed "0.04 grams of cocaine on the snowpaper" and "cocaine residue on the spoons and bottle cap." *Id.* The Eastern District reversed the conviction because there was "no evidence defendant owned the car, rode in it on a frequent basis, or even that he had been in the car prior to when it was stopped." *Id.* Those circumstances were held insufficient to support an "infer[ence] [that] defendant was aware of the snowpaper underneath the rear seat of the car he was a passenger in" or that "he knew that particular spoon had been used for cocaine." *Id.* In *State v. Allen*, 744 S.W.2d 865 (Mo.App. W.D. 1988), the defendant's conviction was reversed based on insufficient evidence to show constructive possession of marijuana. *Id.* at 868. There were two people in the vehicle, the defendant, who was driving, and a female passenger. *Id.* at 866. The defendant was evasive, "would mumble and stutter," and a large trash bag full of marijuana was found in the trunk during the officer's search. *Id.* at 866–67. The Western District reversed the defendant's conviction because no belongings attributable to him were in the trunk and only women's clothing was found near the marijuana. *Id.* at 868.

In *State v. Bristol*, 98 S.W.3d 107 (Mo. App. W.D.2003), all three of the vehicle's occupants were arrested. *Id.* at 110. The defendant was arrested for driving the vehicle while his license was revoked, and his passengers each had outstanding arrest warrants. The arresting officer conducted

a search incident to the arrest and located beneath the driver's seat a metal pipe, "pieces of a 'blunt cigar'—a cigar filled with marijuana—" and a plastic baggie. *Id.* None of these items were in plain view. *Id.* The Western District found that the defendant did not have exclusive control over the vehicle because: 1) he was not the owner of the vehicle; 2) he had been in possession of the vehicle for less than twenty-four hours; and 3) the two other occupants of the vehicle also had access to the console area where the drugs were found. *Id.* at 111. The defendant did not appear nervous, did not make any incriminating statements, and was cooperative. *Id.* at 112. Under these circumstances, the Western District held that without an additional "incriminating circumstance" to show the defendant's guilt, there was insufficient evidence to sustain the conviction. *Id.* at 111–12.

### Nervousness

█ "While nervous conduct may be probative of the defendant's awareness of [illegal] drugs, such conduct 'alone is not sufficient evidence' to prove the defendant's unlawful possession." *State v. Villaneuva,* 147 S.W.3d 126, 130 (Mo.App. W.D.2004) (quoting *State v. Johnson,* 81 S.W.3d 212, 216 (Mo.App. S.D.2002)). "Nervousness is one incriminating fact that will support a conviction only if consistent with the totality of the circumstances." *Villaneuva,* 147 S.W.3d at 131.

Missouri cases have consistently held that nervousness alone is an insufficient "additional incriminating circumstance" to sustain a conviction for possession of a controlled substance. *See e.g., State v. Mercado,* 887 S.W.2d 688, 692 (Mo.App. S.D.1994); *State v. Franco–Amador,* 83 S.W.3d 555, 559 (Mo.App. W.D.2002).

█ When a defendant has another equally probable reason for marked nervousness, there must be evidence of an additional incriminating fact before a permissible inference can be drawn that the defendant had knowledge of and control over the drugs located in the vehicle. For example, an illegal alien's fear of deportation is, in itself, a plausible explanation for a defendant's nervousness and even flight. In *Franco–Amador,* the defendant was an illegal immigrant from Mexico who was attempting to get from Phoenix, Arizona to Atlanta, Georgia to find work. 83 S.W.3d at 556. He agreed to pay someone he met in a convenience store $400 to give him a ride, but was to have received a discount if he helped drive the vehicle. *Id.*

While the defendant was driving, he was pulled over for a minor traffic violation. *Id.* The officer gave the defendant a warning for the moving violation and asked to search the vehicle because the officer smelled a strong odor of air-freshener and spices and both occupants looked "extremely nervous." *Id.* The owner of the vehicle consented to the search. *Id.* During his search of the vehicle, the officer found beneath the back seat cushion 1,113.08 grams of methamphetamine encased in plastic bags that were covered with pepper and other spices and wrapped in duct tape. *Id.* at 557. A roll of duct tape was lying on the front passenger-side floorboard. *Id.* at 558. After the officer had drawn his gun and ordered the defendant and the car's owner to lie on the ground, they ran away from the officer in different directions. *Id.* at 557.

While acknowledging that nervousness is an "incriminating fact which will support a conviction if consistent with the totality of the circumstances," the Western District noted that "[i]t could also be inferred from the circumstances that [the defendant] was nervous at being pulled over because he was an illegal alien." *Id.* at 558. The strong odor coming from the

vehicle was not incriminating because it was the odor of air freshener and pepper; not the odor of an illegal drug. *Id.* at 559. The Western District concluded that there was insufficient evidence to support an inference that the defendant had constructively possessed the drugs because "constructive possession of cocaine could not be found where there was no evidence the defendant owned the vehicle, rode in it on a frequent basis, or even that he had been in the car prior to when it was stopped." *Id.* at 559 (citing *Ray,* 747 S.W.2d at 766).

### Nervousness "Plus"

Missouri courts have found sufficient evidence to sustain a conviction when the defendant was nervous and engaged in some additional affirmative action that, under the totality of the circumstances, demonstrated his knowledge of or control over the drugs at issue. In *State v. Watson,* 290 S.W.3d 103 (Mo.App. S.D.2009), the defendant was pulled over for speeding. *Id.* at 104. He was the only occupant of the vehicle and was acting very nervous, "stuttering his words" and "fidgeting with his hands on his lap" and sticking his hand underneath papers he held on his lap. *Id.* The officer observed a baggie while the defendant was shuffling the papers. *Id.* The officer retrieved the baggie and noted a "green leafy substance" inside. *Id.* Further search revealed a bag of methamphetamine in the driver's floorboard, within the defendant's reach. *Id.* at 104–05. The vehicle was not registered to the defendant, but belonged to a family who was known for having "contact with law enforcement authorities in the past in relation to drugs." *Id.* at 105. In affirming the defendant's conviction, this court distinguished *Bristol, Ingram, Gonzalez,* and *Bowyer,* in that they "involved different factual scenarios and situations involving more than one occupant in the vehicle at the time of the defendant's arrest, clearly implicating the possibilities of shared control and access to the illegal substances found in the vehicle." *Id.* at 107 n. 5. The presence of marijuana in the defendant's lap demonstrated a familiarity with drugs and supported an inference that the defendant was aware of the methamphetamine on the floorboard. *Id.* at 109. The presence of the marijuana in the defendant's lap, in addition to the fact that he was very nervous and was the vehicle's sole occupant, was enough to support the jury's conclusion that, under the totality of the circumstances, the defendant constructively possessed the methamphetamine located at his feet. *Id.*

In *State v. Shinn,* 921 S.W.2d 70 (Mo. App. E.D.1996), the defendant, a passenger in a vehicle that had been stopped for speeding, did not own the car but had been in possession of it for most of the day. *Id.* at 72. The trooper observed both the driver and the defendant bending down toward their feet, "as if to hide something." *Id.* After asking the driver to accompany him to the patrol car, the trooper again saw the defendant "bend forward in his seat as if to 'put something under the seat or do something.'" *Id.* A cocaine pipe and cocaine were later found under the passenger-side floor mat. *Id.* at 72–73. The defendant was also visibly nervous and his answer "was not responsive" when the trooper asked if something illegal was in the vehicle. *Id.* at 72. The appellate court found this was not a "joint possession case," like *Bowyer,* because "the evidence would not prove control by anyone but [the] defendant." *Id.* at 73. The defendant's conviction for possession of cocaine was held to be supported by sufficient evidence. *Id.* at 73.

These cases illustrate that Missouri courts have found sufficient evidence to support a conviction for possession of illegal drugs when the defendant had access

to the drugs that was superior to that of the other occupants in the vehicle and there was additional evidence to show that the defendant had exercised some sort of control over the drugs. For example, in *Chavez*, the defendant was riding in the front passenger seat of a vehicle. 128 S.W.3d at 572. After the defendant was allowed to leave, the officers searched the vehicle and recovered a "plastic bag containing what appeared to be two rocks of crack cocaine and a scale lying between the passenger seat and the door." *Id.* Although the defendant had superior access to the location where the drugs were found, "the State was required to present evidence, in addition to the fact that [the defendant] was sitting in a car in which a controlled substance was found, sufficiently connecting [the defendant] to the cocaine salts." *Id.* at 574.

The State argued that the drugs were in "plain view," as they were not pushed down under the seat, and anyone entering by the passenger side of the vehicle would have seen them. *Id.* at 575. The court noted that "[k]nowledge of the presence of a controlled substance alone, however, is insufficient to sustain a conviction based on possession, and the State must present evidence establishing that the defendant exercised control over the controlled substance." *Id.* (citing *State v. Morris*, 41 S.W.3d 494, 498 (Mo.App. E.D.2000)). Assuming the defendant did see the drugs located between the door and seat, this evidence alone was held insufficient to sustain the conviction, and the Court looked to what other evidence had been adduced. *Chavez*, 128 S.W.3d at 575. The driver of the vehicle testified that the defendant had said that he "needed to get out of Northtown" because he had "a lot of stuff on him," which the driver understood to mean that the defendant "had drugs on him." *Id.* Because the credibility of the testimony of the driver was a question for the trier of fact, the Western District ultimately held

there was sufficient evidence to sustain the conviction under the totality of the circumstances. *Id.* at 576.

In *Millsap*, the female defendant was the driver of a rented vehicle that had been stopped by an officer. 244 S.W.3d at 789. Although another person also had access to the vehicle, the defendant had superior access to several syringes and a glass pipe that were found on the floor of the driver's side of the car. *Id.* The officer testified that it looked as though the contents of the defendant's purse had spilled over. *Id.* The items were in plain view and the defendant was also observed with needle marks on her arm. *Id.* This evidence was sufficient to sustain her conviction. *Id.*

### The Case Against Defendant

The State presented no evidence that the drugs were possessed by Defendant. Because the vehicle in which Defendant was riding was jointly occupied, Defendant's guilt could only be proven by establishing beyond a reasonable doubt that Defendant at least had "constructive possession with joint control, thus invoking the requirement of further evidence connecting the accused with the illegal drugs and—its threshold issue—Defendant's knowledge of the presence of the [drugs]." *Gonzalez*, 235 S.W.3d at 27.

Defendant was riding in the front passenger seat when the vehicle was stopped. Defendant did not own the car. There was no evidence as to how long Defendant had been in the vehicle, and there was no evidence that he had ever been in the vehicle before. The officer pulled the vehicle over "seconds" after it had first drawn his attention. Being nearly midnight, it was dark outside, and there was no evidence that the inside of the vehicle had been illuminated at some time prior to its being pulled over. All three of the vehicle's occupants were very nervous.

All three had active warrants and were arrested as a result of the stop. A search of the vehicle revealed that a bag containing a single cocaine rock was located between the front passenger seat and the door and some loose cocaine rocks were on the floorboard of the front passenger seat.

Without additional incriminating evidence, Defendant's presence in the car and proximity to the drugs is insufficient to support his conviction. *See Chavez,* 128 S.W.3d at 574–75. The drugs in this case were found in the exact same location as those discovered in *Chavez,* where it was held that the fact that the defendant was in close proximity to drugs in plain sight was, in itself, not enough to support his conviction. *Id.* at 574. In *Chavez,* the conviction was sustained because the driver testified that the drugs belonged to the defendant. *Id.* at 575. There was no such testimony in the instant case.

Unlike *Millsap,* Defendant had no personal belongings intermingled with the drugs. *See Millsap,* 244 S.W.3d at 789. Unlike *Ames,* 44 S.W.3d at 829, or *Harris,* 807 S.W.2d 528, Defendant was not seen bending toward his feet or to the side in what could be inferred as an attempt to conceal the drugs. Unlike *Purlee,* 839 S.W.2d at 588, there was no evidence of any powerful drug odor or that Defendant had spent an extended amount of time in the vehicle.

Rather, like *Ingram,* there was no evidence that the drugs were in the location where the officer found them at the time Defendant exited the vehicle. More specifically, there was no evidence as to which side of the back seat the car's third occupant had occupied. If he had been seated behind Defendant, he would also have had easy access to the area between the front passenger seat and front passenger door. And, although Defendant would have had easier access to the front passenger floorboard, a rear-seat passenger could easily have tossed the cocaine rocks onto the front floorboard while exiting the vehicle. There was no evidence as to which passenger left the vehicle first. If the rear-seat passenger exited the vehicle after Defendant, he could have tossed the cocaine rocks on his way out and Defendant would have had no awareness of their presence. Like *Yarber,* 5 S.W.3d at 594, and *Ray,* 747 S.W.2d at 766, it was unknown how long the cocaine had been in those locations and how long or how often Defendant had been in the car, creating at least a reasonable doubt as to Defendant's possession of the drugs.

■ The State argues that there was enough additional evidence to support the conviction because Defendant made an incriminating statement in addition to his being in the vehicle in close proximity to the drugs and exhibiting nervousness at the time of his arrest. The statement to which the State refers is Defendant's statement that Officer Kibby "knew who those drugs belonged to," or, phrased another way during Officer Kibby's testimony, that the officer "knew where those drugs came from." We cannot say that either version of this statement amounted to the equivalent of the statement, "You got me," which has previously been held sufficient to support a finding of knowledge, but insufficient to show control. *Bowyer,* 693 S.W.2d at 849–50. As to the State's claims regarding Defendant's nervousness, we look to *Franco–Amador, supra.* As in *Franco–Amador,* Defendant had another plausible explanation for his nervousness: there was an active warrant out for his arrest. Furthermore, Defendant was not the only nervous occupant of the car—all three occupants were nervous.

The State argues that the instant case is distinguishable from *Brown* and *Bowyer* because here, "there was no evidence showing that the drugs belonged to anyone else." This argument is essentially that

Defendant did not meet his burden of showing that the drugs did not belong to him. Defendant has no such burden. *State v. Reeder,* 395 S.W.2d 209, 211 (Mo. banc 1965) ("The burden of proof is on the State throughout the trial to establish by evidence the guilt of the accused beyond a reasonable doubt"). A Defendant may, but is not required to, put on evidence that he did not commit the charged crime.

After a thorough analysis of prior Missouri cases dealing with the possession of illegal drugs found after an automobile stop and a complete review of the record, we conclude that the State did not present sufficient evidence from which a reasonable fact-finder could find Defendant guilty beyond a reasonable doubt.

The judgment of conviction is reversed, the sentence is vacated, and Defendant is discharged.

BARNEY, J., and BATES, P.J., Concur.