STATE of Missouri, Respondent,

v.

Ryan A. WHITES, Appellant.

No. WD 75236.

Missouri Court of Appeals,
Western District.

June 25, 2013.

Shaun Mackelprang, Jefferson City, for respondent.

Alexa I. Pearson, for appellant.

Before Division Three: JOSEPH M. ELLIS, Presiding Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

JOSEPH M. ELLIS, Judge.

Ryan Whites appeals from his conviction of one count of possession of a controlled substance with the intent to distribute, § 195.211. Appellant was sentenced as a prior and persistent offender to a term of eighteen years imprisonment. For the following reasons, the judgment is reversed.

At approximately 8:00 p.m. on October 8, 2010, Officer Christopher Chamberlin of the Marshall Police Department stopped a Dodge pickup truck heading east on Morrow Street after observing that the truck had an inoperable license plate lamp and license plates issued for a passenger car. A check of the license plate numbers indicated that the license plates were issued for a Pontiac sedan owned by David Parker.

When approached by Officer Chamberlin, the driver identified himself as David Parker. Appellant, who was in the passenger seat, also identified himself. Parker provided proof of insurance for the truck and admitted having placed the license plates from his Pontiac on his new truck. Officer Chamberlin went back to his patrol car to run background checks on Parker and Appellant. While he was doing so, Lieutenant Coney arrived on the scene. Lieutenant Coney noticed two small Ziploc bags containing what appeared to be methamphetamine near the curb about ten to fifteen feet behind where the truck had stopped. The officers arrested Appellant and Parker, placing them in handcuffs, sitting them on the curb, and reading them their *Miranda* warnings. When Appellant was searched, $1,346.00 in cash was found in his wallet along with a bank receipt showing a $5,000.00 deposit into a Bank of America account on August 6, 2010. Both Appellant and Parker denied any knowledge of the Ziploc bags found on the ground by the officers.

Parker gave the officers permission to search the truck. While searching the cab, Officer Chamberlin began to smell a "very strong odor of marijuana." After finding nothing of note in the cab, Officer Chamberlin searched the bed of the truck. He found a backpack sitting in the truck bed in the corner, directly behind the passenger seat. Inside the backpack, Officer Chamberlin found a digital scale, a white trash bag containing 613.34 grams of pro-

cessed marijuana, and some personal grooming items. When Parker was later processed at the police department, a Ziploc bag containing methamphetamine, with a symbol on it matching symbols found on the other recovered bags, was found in one of his socks.

When asked if he was currently employed, Appellant told Officer Chamberlin that he was not. At trial, Officer Chamberlin testified that "he gave—was able to give no explanation as to why he was carrying over $1,300 in his wallet."

Appellant was eventually charged in the Circuit Court of Saline County with one count of possession of marijuana with the intent to distribute and one count of possession of methamphetamine. On March 16, 2012, he was tried by the court and found guilty on the possession of marijuana with the intent to distribute count. He was acquitted on the methamphetamine charge. The trial court subsequently sentenced Appellant as a prior and persistent offender to a term of eighteen years imprisonment.

On appeal, Appellant challenges the sufficiency of the evidence to support his conviction. "When a criminal defendant challenges the sufficiency of the evidence to support his conviction, our review is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." *State v. Chavez*, 128 S.W.3d 569, 573 (Mo. App. W.D.2004). "[T]he function of the reviewing court is not to reweigh the evidence, but to determine if the conviction is supported by sufficient evidence." *State v. Mann*, 129 S.W.3d 462, 467 (Mo.App. S.D. 2004). In making that determination, this Court "accepts as true all of the evidence favorable to the state including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary." *State v. Oliver*, 293 S.W.3d 437, 444 (Mo. banc 2009). However, "[t]he Court may not supply missing evidence, or give the State the benefit of unreasonable, speculative, or forced inferences." *State v. Buford*, 309 S.W.3d 350, 354 (Mo.App. S.D.2010) (internal quotation omitted).

 Section 195.211.1 provides that "it is unlawful for any person . . . to possess with intent to . . . deliver . . . a controlled substance." "Section 195.010(32) defines the terms 'possessed' or 'possessing a controlled substance' as 'a person with the knowledge of the presence and illegal nature of a substance, has actual or constructive possession of the substance.' " *State v. McCleod*, 186 S.W.3d 439, 443 (Mo.App. W.D.2006) (internal quotation omitted). Thus, "[t]o prove possession of a controlled substance, the state must show conscious and intentional possession of the substance, either actual or constructive, and awareness of the presence and nature of the substance." *State v. Stover*, 388 S.W.3d 138, 146–47 (Mo. banc 2012).

"A person has actual possession if the person has the object on his or her person or within easy reach and convenient control." *State v. Morgan*, 366 S.W.3d 565, 575 (Mo.App. E.D.2012) (internal quotation omitted). Appellant did not have actual possession of the marijuana found in the bed of the truck.

Accordingly, we must determine whether Appellant had constructive possession of that marijuana. "A person has constructive possession if one has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons." *Id.* at 576 (internal quotation omitted). "Proof of constructive possession requires, at a minimum, evi-

dence that defendant had access to and control over the premises where the substance was found." *Stover*, 388 S.W.3d at 147 (internal quotation omitted). "Exclusive control over the premises raises an inference of possession and control." *Id.* "However, when there is joint control over the premises where the drugs are discovered, some further evidence or admission must connect the accused with the illegal drugs." *Id.*

■■ Because Appellant did not have exclusive control over the truck, "the state was required to present additional incriminating evidence in order to prove knowledge and control sufficient to support a finding of possession of the controlled substance." *Id.* "In cases involving joint control of an automobile, a defendant is deemed to have both knowledge and control of items discovered within the automobile, and, therefore, possession in the legal sense, where there is additional evidence connecting him with the items." *Id.* (internal quotation omitted). "This additional evidence must demonstrate sufficient incriminating circumstances to permit the inference of a defendant's knowledge and control over the controlled substance." *Id.* (internal quotation omitted). Additional incriminating circumstances that may help support an inference of knowledge and control include:

Finding a large quantity of drugs in the vehicle;

Finding drugs having a large monetary value in the vehicle;

Easy accessibility or routine access to the drugs;

The odor of drugs in the vehicle;

The presence of the defendant's personal belongings in close proximity to the drugs;

Making false statements in an attempt to deceive the police;

The defendant's nervousness during the search;

The defendant's flight from law enforcement;

The presence of drugs in plain view;

Other conduct and statements made by the accused; and

The fact that the defendant rented the vehicle.

*Id.* "We consider the totality of the circumstances in determining whether the evidence of additional incriminating circumstances sufficiently supports an inference of knowledge and control." *Morgan*, 366 S.W.3d at 577.

■ The State contends that the location of the backpack sitting upright in the truck bed behind Appellant, the strong odor of marijuana noted by the arresting officers, and the cash found in Appellant's wallet give rise to a reasonable inference that Appellant had constructive possession of the marijuana.

Certainly, the "very strong odor of marijuana," first detected by the officers when they returned to the truck a third time and began searching the cab, could support an inference that Appellant was aware that some marijuana was present somewhere in the truck. "[K]nowledge of the presence of a controlled substance alone, however, is insufficient to sustain a conviction based on possession, and the State must present evidence establishing that the defendant exercised control over the controlled substance." *Buford*, 309 S.W.3d at 360 (internal quotation omitted).

The State argues that the location of the backpack in the bed of the truck was nearest the passenger seat and that it could, therefore, be reasonably inferred that it was placed there by the current passen-

ger.[1] Our courts have rejected similar arguments in the past.

In *State v. Buford*, 309 S.W.3d 350, 353 (Mo.App. S.D.2010), the defendant was seated in the front passenger seat of a car when it was stopped by the police. The owner of the car was driving, and a third person was in the back seat. *Id.* All three occupants were arrested after a check revealed outstanding warrants for all of them. *Id.* The arresting officer searched the car and found a bag with one crack cocaine rock located between the front passenger seat and the door and additional loose crack cocaine rocks in plain view on the floorboard of the front passenger seat. *Id.* The Southern District of this Court held that the State failed to present sufficient evidence that the defendant possessed the cocaine, noting that the defendant's mere presence in the car and proximity to the drugs would not support a conviction without additional incriminating evidence. *Id.* at 360–61. The court noted that the defendant did not own the car, did not have personal belongings intermingled with the drugs, was not seen making suspicious movements, and that the outstanding warrant for his arrest provided a plausible reason for his apparent nervousness. *Id.* The court further noted that there was no evidence how long the defendant had been in the car or how often he had been present therein and that the evidence did not establish how long the cocaine had been present in the car. *Id.*

In *State v. Chavez*, 128 S.W.3d 569, 572 (Mo.App. W.D.2004), the defendant was riding in the front passenger seat of a vehicle driven by an individual, who was arrested. After the defendant was allowed to leave, officers searched the vehicle and found a "plastic bag containing what appeared to be two rocks of crack cocaine and a scale lying between the passenger seat and the door." *Id.* This Court noted that, although the defendant had superior access to the location where the drugs were found, "the State was required to present evidence, in addition to the fact that [the defendant] was sitting in a car in which a controlled substance was found, sufficiently connecting [the defendant] to the cocaine salts." *Id.* at 574. We further stated that, even if the drugs were in plain view and anyone entering the passenger side would have seen them, "[k]nowledge of the presence of a controlled substance alone . . . is insufficient to sustain a conviction based on possession, and the State must present evidence establishing that the defendant exercised control over the controlled substance." *Id.* at 575. Evidence of the defendant's proximity to the drugs in a position where a passenger would have placed something in the car, even where the drugs were in plain view, was held insufficient, without additional evidence tying the defendant to the drugs, to sustain the conviction. *Id.* at 575. This Court ultimately found enough additional evidence to support the defendant's conviction based upon the testimony of the driver that the defendant had said that he "needed to get out of Northtown" because he had "a lot of stuff on him," which the driver understood to mean that the defendant "had drugs on him." *Id.* at 576. We noted that the credibility of the testimony of the driver was a question for the trier of fact and held that there was sufficient evidence to sustain the conviction under the totality of the circumstances. *Id.*

1. The evidence does not reflect whether the cab had a back window that would allow the driver to access to the truck bed. If such a window were present, the backpack was found in the position in the truck bed where a driver reaching through such a window would place an item.

In the case at bar, the location of the marijuana in a backpack in the cab behind the passenger seat of the truck was more attenuated than the location of the drugs in *Chavez* and *Buford*, and while marijuana could generally be smelled in the cab, it was not in plain sight like the cocaine in those cases. Additional evidence was required to establish that Appellant exercised control over marijuana in the backpack.

The only additional evidence relied upon by the State was the fact that $1,346.00 in cash was found in Appellant's wallet.[2] The State argues:

> It was reasonable to infer—based on the large amount of marijuana and the scales—that the backpack belonged to a drug dealer, and drug dealers often carry large amounts of cash. Here, [Appellant] was carrying a large amount of cash, and, accordingly, the court could have readily inferred that the person holding a large amount of cash was involved in the apparent drug-dealing operation.

In making this argument, the State attempts to rely upon *State v. Jackson*, 304 S.W.3d 791, 794 (Mo.App. W.D.2010). In that case, based on a tip about illegal drug activity at a house, detectives conducted surveillance and observed frequent, short-term traffic indicating to the detectives that drugs were being sold there. *Id.* at 792. The detectives regularly observed the defendant, his girlfriend, and her children at the house and concluded that they lived in the house. *Id.* The detectives eventually executed a search warrant at the house. *Id.* The defendant was present with his girlfriend, two other adults, and his girlfriend's three children. *Id.* In total, 56.60 grams of marijuana, 8.46 grams of powder containing cocaine base, and 8.10 grams of powder containing cocaine salts were found in the home. *Id.* The defendant was arrested and searched. *Id.* He had $990.00 in cash in his pockets, including forty-five $20.00 bills, which officers testified was a common denomination in transactions for crack cocaine. *Id.* The defendant's girlfriend had a total of approximately $20.00 in cash in her possession. *Id.* She later told her parole officer that the defendant had brought the drugs into the home and sold them from the home. *Id.* at 793. In the course of affirming the defendant's conviction for drug trafficking, this Court addressed the sufficiency of the evidence to establish the defendant acted together with his girlfriend to traffic the cocaine base found in the house. *Id.* at 794. In part, we made the following comments:

> Officer Keller testified that [defendant's girlfriend] admitted [defendant]'s involvement in the illegal drug transac-

---

2. The State also attempts to somehow rely upon the anonymous deposit slip found on Appellant reflecting a $5,000.00 deposit into a bank account on August 6, 2010. The State fails to explain how such a deposit two months before his arrest establishes any connection to the marijuana and merely argues that the deposit slip suggests that Appellant "recently had been in possession of even more money." There are certainly any number of legitimate reasons for a person to deposit $5,000.00 in a bank account. While the State argues that, because Appellant was unemployed, it is reasonable to infer that the cash found in Appellant's wallet was obtained from the sale of marijuana from the backpack, it seems at least equally likely that the cash on Appellant was part of that $5,000.00. Indeed, the fact that Appellant was unemployed at the time of his arrest on October 8, 2010, is not evidence, or even permits a reasonable inference, that he was unemployed more than two months before on August 6, 2010. Moreover, since the money was deposited to a bank account, it is perhaps more likely that it was from some legitimate source because it is unlikely that a drug dealer would be depositing large sums obtained through drug sales into a bank account easily traceable by law enforcement.

tions. Additionally, when police executed the search warrant, [defendant] was in possession of $990, while [defendant's girlfriend] had little more than $20. From this, a reasonable person could infer that Jackson was an active participant in the illegal drug distribution that [defendant's girlfriend] testified was operating out of her home. It is not impermissible, or unbelievable, for a juror to infer that the only person holding a large amount of cash in a drug house is involved in the illegal transactions occurring at that residence; particularly when that amount is nearly $1,000 and it is being held in denominations that are consistent with drug dealing. The statement made by [defendant's girlfriend] to Officer Keller—that [defendant] controlled all of the money from the drug dealings—only bolsters this conclusion. *Id.*

Unlike *Jackson*, the case at bar did not have evidence of drug sales having recently occurred. Indeed, while the scales in the backpack with a large amount of marijuana would indicate that the backpack's owner intended to sell the marijuana in the future, the marijuana was found in bulk in a single trash bag, and the State adduced no evidence of any small bags or other containers that could have been used for distribution being found in the backpack or in the truck. Furthermore, unlike *Jackson*, the record does not reflect the denomination of the cash found on Appellant was in amounts typically used in drug transactions. The simple fact that Appellant had $1,346.00 in cash in his wallet does not allow for a reasonable inference that he exercised control over the marijuana in the backpack. *See State v. Morris*, 41 S.W.3d 494, 498 (Mo.App. E.D.2000) (noting that the $900.00 in cash found in the defendant's pocket "does not show knowledge of

the presence of the drugs or control over them; furthermore, it is not an additional incriminating factor that would establish an inference of constructive possession"). As noted *supra*, this Court "may not . . . give the State the benefit of unreasonable, speculative, or forced inferences." *Buford*, 309 S.W.3d at 354 (internal quotation omitted).

Considering the totality of the circumstances, the evidence presented in this case was insufficient to give rise to a reasonable inference that Appellant exercised control over the marijuana found in the backpack in the bed of the truck. Accordingly, his conviction is not supported by the evidence and must be reversed. Point granted.

The judgment is reversed.[3]

All concur.

---

**3.** Having reached this conclusion, we need     not address Appellant's other point on appeal.