

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | **WD86924** |
| **V.** | ) | |
| | ) | **OPINION FILED:** |
| **JAMES KEITH EGGLESTON,** | ) | **APRIL 29, 2025** |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Jon E. Beetem, Judge

Before Division Two:  Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and W. Douglas Thomson, Judge

James Keith Eggleston appeals the judgment of the Circuit Court of Cole County, Missouri ("trial court"), convicting him, after a bench trial, of one count of possession of a controlled substance, section 579.015.[1]  On appeal, Eggleston argues that the trial court erred in overruling his motion for acquittal because the State did not produce sufficient evidence to prove beyond a reasonable doubt that he knowingly possessed the methamphetamine found in the vehicle that he was driving.

We reverse the judgment of the trial court.

---

[1] All statutory references are to the Revised Statutes of Missouri (2016), as updated by supplement.

**Factual and Procedural Background**

On July 8, 2020, at 11:45 p.m., a Jefferson City police officer ("Officer")[2] observed an SUV driving out from behind a building complex, go onto the street and enter another parking lot, and drive behind that building. All of the businesses in both locations were closed. Officer found this suspicious and decided to make contact with the vehicle. Officer identified Eggleston as the driver; there was also a female passenger ("Passenger") in the vehicle. Officer questioned Eggleston as to what he was doing, and Eggleston replied that he was looking for an ATM;[3] he also informed Officer that "he probably had a warrant." Officer learned from dispatch that Eggleston did have a warrant for his arrest and also that his driver's license was revoked. Officer took Eggleston into custody and secured him in his patrol vehicle. Eggleston was cooperative and was not belligerent or nervous. Eggleston did not appear to be under the influence of any impairing substance. Passenger remained in the vehicle during this time.

Passenger, however, "appeared to be under the influence of a narcotic." Passenger's pupils were dilated, and her body was jerking with uncontrollable movements. Passenger did not have a valid driver's license, but she was allowed to leave on foot at that time. The SUV was not in a parking space, so Officer asked Eggleston if he could park the vehicle. Eggleston responded that Officer could not search the vehicle.

---

[2] Pursuant to section 509.520 RSMo., we do not list names of witnesses other than parties.

[3] On cross-examination, Officer acknowledged that Google maps showed that there was a credit union in one of the buildings where Eggleston was driving.

2

Officer requested a K-9 unit respond to his location, and after the dog alerted on the vehicle, the vehicle was searched.

The search of the vehicle revealed a black "medical marijuana bottle. . . with no label" "just on the other side of [the] shifter selector" in a three-inch tall "cubby area that ran almost the length of the dashboard itself." The "cubby area" was not visible from outside the vehicle. In the bottle recovered from the vehicle was approximately four grams of methamphetamine. The K-9 officer, who also participated in the search, found a cloth bag belonging to Passenger in the glove compartment that contained "some marijuana pipes" and Passenger's ID.

At the close of the State's evidence, Eggleston moved for a judgment of acquittal arguing that the State failed to establish Eggleston's possession of the drugs. The motion was ultimately denied, and the court found Eggleston guilty. Eggleston was sentenced to three years' imprisonment. This appeal follows.

**Standard of Review**

When reviewing a claim that the evidence was insufficient to support a conviction and to withstand a motion for judgment of acquittal, we do not reweigh the evidence, but, rather, accept as true all evidence that tends to prove guilt together with all reasonable inferences that support the guilty verdict, and ignore all contrary evidence and inferences. *State v. Barnett*, 595 S.W.3d 515, 522 (Mo. App. E.D. 2020). Our review is not an assessment of whether this Court believes the evidence at trial established guilt beyond a reasonable doubt, but whether, in light of the evidence most favorable to the State, *any*

3

rational fact-finder could have found all essential elements of the crime beyond a reasonable doubt. *State v. Zetina-Torres*, 482 S.W.3d 801, 806 (Mo. banc 2016).

## Analysis

Eggleston's sole point on appeal is that the trial court erred in denying his motion for judgment of acquittal because the State did not produce sufficient evidence that he knowingly possessed the methamphetamine found in the vehicle he was driving. We agree.

"To sustain a conviction for possession of a controlled substance, the State must prove (1) conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of the substance." *State v. Millsap*, 244 S.W.3d 786, 788 (Mo. App. S.D. 2008) (internal quotation omitted). Both the knowledge and control elements may be proven by circumstantial evidence. *State v. Driskell*, 167 S.W.3d 267, 269 (Mo. App. W.D. 2005). These two prongs, however, are "not entirely independent, in that both require proof of the defendant's knowledge of the presence of the controlled substance." *State v. Buford*, 309 S.W.3d 350, 355 (Mo. App. S.D. 2010).

"Proof of a defendant's knowledge often is supplied by circumstantial evidence of the acts and conduct of the defendant that permit an inference that he or she knew of the existence of the contraband." *State v. Stover*, 388 S.W.3d 138, 147 (Mo. banc 2012). "When an unlawful substance or item is found in a location that is exclusively controlled or occupied by a defendant, the defendant is deemed to have knowledge of and control over the substance or item." *State v. Glaze*, 611 S.W.3d 789, 795 (Mo. App. W.D. 2020).

4

When the control over the premises is joint, however, some further evidence or admission must connect the accused with the illegal substance. *Stover*, 388 S.W.3d at 147. "The State must present some incriminating circumstance that implies the accused knew of the presence of the drugs and the same were under his control." *Buford*, 309 S.W.3d at 355.

Several circumstances have been found to support an inference of the defendant's knowledge and control of a substance when joint possession (or here, occupation) of the premises, (here a vehicle) exists: finding a large quantity of drugs in the vehicle; finding drugs having a large monetary value in the vehicle; easy accessibility or routine access to the drugs; the odor of drugs in the vehicle; the presence of the defendant's personal belongings in close proximity to the drugs; making false statements in an attempt to deceive the police; defendant's nervousness during the search; flight from law enforcement; the presence of the drugs in plain view; and the fact that the defendant rented the vehicle. *See Glaze*, 611 S.W.3d at 795-96; *Buford*, 309 S.W.3d at 355-56; *State v. West*, 21 S.W.3d 59, 64 (Mo. App. W.D. 2000).

In this case the only one of these enumerated circumstances tying Eggleston to the methamphetamine found in the vehicle was that it was possibly accessible to Eggleston as the driver of the vehicle. The methamphetamine was found in a cubby under the dash that was within Eggleston's reach (although on the passenger's side of the gear shift); however, the black bottle containing the methamphetamine was not found until the vehicle was searched, after Eggleston had been detained and secured in Officer's patrol car during which time Passenger (who appeared to be significantly under the influence of "a narcotic") remained in the vehicle and could have placed the bottle where it was

5

recovered. *See Buford*, 309 S.W.3d at 361 ("If the rear-seat passenger exited the vehicle after Defendant, he could have tossed the cocaine rocks on his way out and Defendant would have had no awareness of their presence."). Moreover, even if the bottle containing the methamphetamine had been in the dash cubby area the entire time, the evidence was that it was, at best, equally accessible to Eggleston and Passenger. This alone is insufficient to support a finding of Eggleston's knowledge of its presence and nature. *Id.* ("Without additional incriminating evidence, Defendant's presence in the car and proximity to the drugs is insufficient to support his conviction."); *State v. Bristol*, 98 S.W.3d 107, 111-12 (Mo. App. W.D. 2003) ("Proximity to the contraband alone fails to prove ownership. There is no evidence that Bristol exhibited signs of consciousness of guilt. He gave his correct name to the Troopers, was cooperative, and did not appear nervous or make any incriminating statements.") (internal citation omitted). If anything, Passenger had superior access to the methamphetamine; Officer, who was searching from the driver's seat, stated that the bottle was "just on the other side of [the] shifter selector", which would make it closer to the passenger's side of the vehicle. The proximity of the concealed drugs to where Eggleston was seated in the vehicle is insufficient by itself to support his possession conviction.

The State argues in its brief that the methamphetamine was in plain view, but Officer testified that it was contained inside a black bottle with no label. While it is possible the bottle was in plain view while Eggleston was in the vehicle, the drugs inside of it were not.

6

The other enumerated factors do not support a verdict of possession for Eggleston. The quantity of drugs found was relatively small and did not have a large monetary value. The drugs were not commingled with Eggleston's personal effects; instead, they were in a medical marijuana bottle, and marijuana pipes were found among Passenger's personal belongings, including her ID. Also, Passenger appeared to Officer to be under the influence of a narcotic, which would suggest that the drugs belonged to her. *See Glaze*, 611 S.W.3d at 796 (passenger had the appearance of an intravenous drug user, which supported an inference that she possessed the drugs found in the vehicle). Officer did not detect any odor of any type of drugs coming from the vehicle. Eggleston did not give false statements to law enforcement, did not flee, and did not appear nervous. The vehicle had not been rented.

The State makes much of Eggleston's ownership of the vehicle, which it infers from his having been the driver. However, the State, which retained the burden of proof, produced no evidence that Eggleston owned the vehicle, although the State could presumably easily have done so considering it has access to vehicle registration records. More importantly, the State provides no authority implying ownership by virtue of the defendant's having driven the vehicle, especially where the inferred ownership is then used to establish possession of illegal substances.

There was no evidence the State attempted to take fingerprints from the bottle in which the drugs were located to determine if Eggleston had handled the bottle. There was no evidence that Eggleston or passenger was questioned about the ownership of the bottle.

7

The only other fact the State claims supports a verdict of guilt is Eggleston's refusal to provide permission for Officer to search the vehicle after Officer had asked Eggleston if he could move the vehicle to a parking space because the State argues this shows a consciousness of guilt. But Officer acknowledged that Eggleston had a right to refuse consent to search, and "refusal to give consent to search cannot be used to infer wrongful activity." *State v. West*, 21 S.W.3d 59, 66 (Mo. App. W.D. 2000). The State argues that Eggleston's refusal to consent to the search of the vehicle was "non-responsive" and thus evidence of consciousness of guilt, but the cases cited to support this argument are inapplicable. *Buford* mentions that the defendant's answer to the officer's question was non-responsive among a long list of other facts supporting a finding of possession, and it cites *State v. Shinn*, 921 S.W.2d 70, 72-73 (Mo. App. E.D. 1996), where the inconsistent statement, although mentioned in the facts, did not appear in the analysis of factors supporting a finding of possession. *See Buford*, 309 S.W.3d at 359. Additionally, it is reasonable for a driver to presume that an officer asking for permission to enter a vehicle would be looking for a reason to examine the interior of the vehicle.

In any event, Eggleston's refusal to consent to the search of the vehicle could easily be attributable to his own observations of Passenger's impaired condition and a suspicion that she may have possessed illegal substances within the vehicle. And if he suspected or even knew that there were illegal substances within the vehicle, this alone would still be insufficient. A conviction for possession requires proof that the defendant *both* was aware of the presence and nature of the substance *and* consciously and

8

intentionally possessed the substance. *Millsap*, 244 S.W.3d at 788. In short, Eggleston's refusal to consent to the search of the vehicle in this case is not evidence that he possessed the methamphetamine found inside a container in the vehicle.

Taking all of the evidence collectively, the State in this case failed to produce sufficient substantial evidence to support a finding beyond a reasonable doubt that Eggleston possessed the methamphetamine found in the vehicle, and therefore his conviction and sentence must be reversed. Eggleston's point on appeal is granted.

### Conclusion

The judgment of the trial court is reversed.

_____
Gary D. Witt, Judge

All concur

9